UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

**XY, LLC,**
22575 SH 6 SOUTH,
NAVASOTA, TEXAS 77868
    **Plaintiff,**

   **v.**

**TRANS OVA GENETICS, L.C.,**
2938 380th STREET,
SIOUX CENTER, IA 51250
    **Defendant.**

INTREXON CORPORATION, 20374
SENECA MEADOWS PARKWAY,
GERMANTOWN, MD 20876
   **Third-Party Movant**

Miscellaneous Action No. _____

(This action currently is pending in the United States District Court for the District of Colorado as Case No. 1:13-CV-00876-WJM-BNB)

**MEMORANDUM IN SUPPORT OF THIRD-PARTY INTREXON'S MOTION TO QUASH SUBPOENA FOR DOCUMENTS AND DEPOSITION OF 30(B)(6) WITNESS AND ALTERNATIVELY FOR A PROTECTIVE ORDER**

# TABLE OF CONTENTS

**Page**

MEMORANDUM IN SUPPORT OF THIRD-PARTY INTREXON'S MOTION
TO QUASH SUBPOENA FOR DOCUMENTS AND DEPOSITION OF
30(B)(6) WITNESS AND ALTERNATIVELY FOR A PROTECTIVE
ORDER ......................................................................................................................1

BACKGROUND.........................................................................................................3

ARGUMENT ..............................................................................................................7

I.      LEGAL STANDARD....................................................................................7

II.     PLAINTIFFS ARE NOT ENTITLED TO THE DISCOVERY THEY
        DEMAND .......................................................................................................7

        A.      The Subpoena Seeks Irrelevant Discovery And Imposes An Undue
                Burden on Intrexon ...........................................................................7

        B.      The Subpoena Improperly Requires Disclosure of Information
                Protected By Privilege ......................................................................11

        C.      The Subpoena Improperly Demands Trade Secrets, Confidential
                Research and Commercial Information, and Expert Information .............12

        D.      The Subpoena Failed to Allow Reasonable Time for Compliance ............15

III.    ALTERNATIVELY, THE COURT SHOULD MODIFY THE
        SUBPOENA AND GRANT A PROTECTIVE ORDER TO INTREXON ..........15

## TABLE OF AUTHORITIES

Page(s)

CASES

*Automated Solutions Corp. v. Paragon Data Sys.*,
    231 Fed. Appx. 495 (7th Cir. Ill. 2007) ..................................................................8

*\*CFTC v. McGraw Hill Cos. (In re Application to Enforce Admin. Subpoena)*,
    390 F. Supp. 2d 27 (D.D.C. 2005) ........................................................................8, 9

*Educ. Fin. Council v. Oberg*,
    2010 U.S. Dist. LEXIS 102221 (D.D.C. Mar. 8, 2010)........................................10

*In re Vitamins Antitrust Litig.*,
    211 F.R.D. 1 (D.D.C. 2002)...................................................................................11

*\*In re Wheat Farmers Antitrust Class Action Litigation*
    1983 U.S. Dist. LEXIS 18788 (D.D.C. Mar. 4, 1983)....................................12, 13

*Meyer v. A&A Logistics*,
    2014 U.S. Dist. LEXIS 100625 (N.D. Ill. 2014) ...................................................8

*\*Micro Motion, Inc. v. Kane Steel Co.*,
    894 F.2d 1318 (Fed. Cir. 1990)...............................................................................8

*\*North Carolina Right to Life, Inc. v. Leake*,
    231 F.R.D. 49 (D.D.C. 2005)..................................................................................7

*\*Pharm. Research & Mfrs. of Am. v. FTC*,
    2014 U.S. Dist. LEXIS 73822 (D.D.C. May 30, 2014).........................................14

*Redfish Key Villas Condo. Ass'n v. Amerisure Ins. Co.*,
    2014 U.S. Dist. LEXIS 13028 (M.D. Fla. Feb. 3, 2014) ......................................15

*Reliant Energy Power Generation, Inc. v. FERC*,
    520 F. Supp. 2d 194 (D.D.C. 2007).......................................................................11

*Schulman v. Saloon Bev., Inc.*,
    2014 U.S. Dist. LEXIS 93070 (D. Vt. July 9, 2014) ............................................15

*United States v. Bazaarvoice, Inc.*,
    2014 U.S. Dist. LEXIS 3284 (N.D. Cal. Jan. 8, 2014) ...........................................2

*United States v. Kellogg Brown & Root Servs.*,
    284 F.R.D. 22 (D.D.C. 2012)...............................................................................8, 9

*United States v. Libby*,
    432 F. Supp. 2d 26 (D.D.C. 2006) .................................................................9

*Viskase v. World Pac*,
    2010 U.S. Dist. LEXIS 93991 (N.D. Ill. Sept. 9, 2010) ...............................8

*Watts v. Secs. and Exchange Comm'n*,
    482 F.3d 501 (D.C. Cir. 2007) .....................................................................7

*Zoological Soc'y of Buffalo, Inc. v. Carvedrock, LLC*,
    2013 U.S. Dist. LEXIS 148340 (W.D.N.Y. Oct. 15, 2013)...........................8

STATUTES AND OTHER AUTHORITIES

15 U.S.C. §18(a) ..............................................................................................2, 5, 9

15 U.S.C. §18a(h) .......................................................................................6, 13, 14

16 C.F.R. §801.1(a)(1) .....................................................................................2, 5

16 C.F.R. §801.1(a)(3) ..................................................................................2, 5, 9

16 C.F.R. §801.1(b) ..........................................................................................5, 9

Fed. R. Civ. P. 26(b) ......................................................................................8, 11

Fed. R. Civ. P. 26(c) ...........................................................................................15

Fed. R. Civ. P. 45(d)(3)(A) .......................................................................... passim

Local Rule 7 ..........................................................................................................1

Local Rule 7(f).......................................................................................................3

Third-Party Intrexon Corporation ("Intrexon") moves this Court under Rule 45(d)(3), Fed. R. Civ. P., and Local Rule 7, to quash the subpoena for a deposition *duces tecum* and for documents (the "Subpoena"), issued by XY, LLC and Inguran LLC to non-party Intrexon in *XY, LLC v. Trans Ova Genetics, L.C., U.S. District Court for the District of Colorado, Case No. 1:13-CV-00876-WJM-BNB* (the "XY or underlying litigation"). *See* Subpoena (Exhibit 1).[1]

The underlying litigation is a patent infringement and breach of contract case brought by XY, LLC against Trans Ova Genetics, LC ("TOG"). TOG responded, in part, with certain antitrust counterclaims against XY and its parent company, Inguran LLC. Now, XY and Inguran (collectively, "Plaintiffs" or "XY") seek third-party discovery from Intrexon concerning Intrexon's still pending acquisition of TOG.[2]

The Subpoena also calls for documents and testimony concerning market information "contained in" or prepared by Intrexon "as called for" in the "HSR [Hart, Scott, Rodino] 4(c) Documents" defined in the Subpoena. Exhibit 1 at 6.[3] However, HSR 4(c) Documents were prepared and submitted by the ultimate parent of Intrexon, <u>not</u> by Intrexon, as required by the law. *See,* 15 U.S.C. §18(a); 16 C.F.R. §801.1(a)(1) and (a)(3). *Intrexon did not prepare the requested documents and is not in possession or control of such documents.*

---

[1] For citation convenience, page numbers have been added to Exhibit 1.

[2] The Subpoena was issued by the U.S. District Court for the District of Colorado. Pursuant to Rule 45(d)(3)(A), Intrexon moves to quash in this court, because the Subpoena requires Intrexon to comply and to testify in the District of Columbia. *See* Subpoena (Exhibit 1).

[3] "The HSR Act requires entities larger than specified thresholds to file various notifications with the government before merging. 15 U.S.C. §18a. The HSR Act thus enables the Antitrust Division of the United States Department of Justice and the Federal Trade Commission to review proposed mergers before they are consummated ...." *United States v. Bazaarvoice, Inc.,* 2014 U.S. Dist. LEXIS 3284,*258 (N.D. Cal. Jan. 8, 2014).

The Subpoena calls for correspondence between Intrexon and TOG concerning the HSR 4(c) Documents.  Exhibit 1 at 7.  *Intrexon has no such correspondence either.*  Furthermore, if any such correspondence existed, XY could obtain it from TOG.

The Subpoena calls for correspondence between Intrexon and TOG "concerning XY, Inguran, or both" Exhibit 1 at 7.  If there were any such correspondence, XY can obtain it from TOG.  This sweeping request is also too broad and is unduly burdensome.  It is not targeted to relevant facts in the underlying litigation and is not reasonably calculated to lead to admissible evidence from a third party.

Additionally, the Subpoena seeks highly confidential information from a non-party that is irrelevant to this litigation.   It calls for disclosure of trade secrets, confidential research, and confidential commercial information.   It calls for internal expert opinions and information developed by a third-party for its own business purposes, divorced from any claims in the underlying litigation.  It calls for privileged communications and attorney work product.  The information sought from Intrexon does not concern the contract and patent infringement dispute between XY and TOG.  It also does not concern alleged anti-competitive conduct by XY in TOG's counterclaims.  Intrexon's independent marketplace review and its research, analysis and conclusions regarding TOG are not relevant to the XY Litigation.  Furthermore, such third-party information does not become relevant or discoverable by being incorporated into a confidential HSR submission, no matter whose submission it was.

The Subpoena also did not provide Intrexon with a reasonable time to comply.  *See* Fed. R. Civ. P. 45(d)(3)(A)(i).  It was issued on July 14, 2014 and was received by Intrexon on July

21, 2014. Lehr Declaration, at ¶3.  The return date is July 30, 2014.[4]  *See* Exhibit 1.  This is not

a reasonable time for Intrexon to identify and produce non-privileged responsive documents and

information (if any), and to identify and produce one or more corresponding 30(b)(6) witnesses.[5]

Accordingly, Intrexon respectfully requests that this Court issue an Order quashing the

Subpoena.

Pursuant to Local Rule 7(f), Intrexon respectfully requests an oral hearing.

## BACKGROUND

The dispute in the XY Litigation, pending in the United States District Court for the

District of Colorado, arises from Plaintiff XY's claims against Defendant TOG for patent

infringement and breach of contract.  XY is a wholly owned subsidiary of Inguran, doing

business as Sexing Technologies.  TOG is in the process of being acquired by Intrexon.  As of

the Subpoena, and at all relevant times, TOG and Intrexon were and are separate companies,

wholly independent from each other.

TOG is accused of infringing certain XY patents concerning the use of flow cytometry to

separate non-human mammalian sperm cells that carry an X chromosome from those carrying a

Y chromosome, particularly in cattle.  Separated sperm cells can be used for sex selection to

produce livestock offspring of a desired gender.  TOG has a license under the XY patents.  XY

alleges the license was breached and is terminated.  *See* Second Amended Complaint (Exhibit 2).

---

[4]  Intrexon conferred with counsel for XY regarding the Subpoena on July 28, 2014.  No
agreement was reached, and Intrexon brings this Motion.

[5]  XY is aware that it is seeking non-public and highly confidential information from a non-party,
but XY has made no effort to contact Intrexon to offer a protective order.  If XY considered this
information important and wanted to expedite its discovery, one would think XY at least would
have proposed confidentiality arrangements to Intrexon.

In its counterclaims, TOG alleges, *inter alia*, that XY itself, and since May 2007, as led by Inguran, has dominated the U.S. market for technology related to the sorting of non-human, mammalian semen by sex. "XY has done so by, among other things, engaging in acts of patent misuse, inequitable conduct before the Patent Office, and other anticompetitive conduct associated with its licensing program." *See* TOG's Counterclaims (Exhibit 3, at 18). The facts and occurrences constituting the alleged anti-competitive conduct concern how XY and Inguran obtained the patents, how the patents were licensed to TOG, and how the license was wrongfully terminated. *Id.* at 19-31. TOG alleges that XY and Inguran have used such anti-competitive conduct to restrict TOG's sales, exclude TOG and others from the market, maintain a monopoly, and inflate prices. *Id.* at 31-32. *See also id.* at 54-60.

None of TOG's antitrust allegations against XY and Inguran have anything to do with Intrexon or its pending acquisition of TOG. Whether Intrexon has any views about these allegations, such non-party views are irrelevant to the underlying litigation. Whether Intrexon has developed information or opinions about the market for sorting of non-human, mammalian semen by sex, such non-party materials are irrelevant to the underlying litigation. Intrexon's market research is not in any manner connected to XY's past misconduct and unfair dealings. Everything sought by XY under the Subpoena occurred long after this lawsuit was commenced or any counterclaims were made. Moreover, the documents, information, and testimony sought by XY and Inguran are not just irrelevant; they are privileged, trade secrets, highly confidential research and commercial information, inadmissible expert information, and hearsay, all proprietary to non-party Intrexon, and all protected from disclosure by Rule 45(d)(3).

Written discovery closed in the XY litigation on June 10, 2014. XY made an unopposed motion for limited additional discovery of TOG, and of third-party Intrexon, "relating to

-4-

Intrexon's recently announced acquisition of Trans Ova." *See* XY's Unopposed Discovery Motion, Exhibit 4, at 1.  Intrexon had no opportunity to oppose that motion.  The motion noted HSR Documents which XY presumed were submitted to the FTC and the DOJ by each of TOG and Intrexon, under the Hart-Scott-Rodino Antitrust Improvement Act of 1976 (the "HSR Act").  *Id.* at 2; Subpoena, at 5-6 (Exhibit 1).

At least with respect to Intrexon, XY's presumption was wrong.  No such submission was made by Intrexon or is in its possession or control.  Intrexon has not received any materials related to any HSR submission by TOG and did not collaborate or share information with TOG in connection with any HSR submission. *See* Lehr Declaration, at ¶5-9  and 15 U.S.C. §18(a); 16 C.F.R. §801.1(a)(1); and (a)(3).[6]

XY anyway is not entitled to Intrexon documents concerning its acquisition of TOG or its market research, nor can it depose Intrexon about them.  Intrexon's research prior to its purchase of TOG is not relevant to TOG's research, nor to TOG's antitrust counterclaims, nor to XY's defenses.  The litigating parties can and will develop their own research and analyses.  Intrexon's non-party homework for its business decisions can have no bearing on the underlying litigation.

Intrexon's facts come from publically available information and from information provided by TOG.  Lehr Declaration at ¶7.  XY has had the opportunity to obtain the same facts from public records and by discovery of TOG.  The parties to the XY litigation have engaged in an extensive period of mutual discovery.  XY also was granted additional discovery of TOG

---

[6] The HSR Act provides that "no person" shall acquire any voting securities or assets of any other "person," unless they both file a statutory notification. 15 U.S.C. §18(a).  This "person" is "an ultimate parent entity and all entities which it controls directly or indirectly." *See* 16 C.F.R. §801.1(a)(1).  The ultimate parent is "an entity which is not controlled by any other entity." *See* 16 C.F.R. §801.1(a)(3).  In the case of a corporation like Intrexon, "control" is the entity "holding 50 percent or more of the outstanding voting securities of an issuer." *See* 16 C.F.R. §801.1(b).

about market share, after discovery closed. Nevertheless, XY also seeks to "subpoena Intrexon for the same documents" it is seeking from TOG. Discovery Motion at 5 (Exhibit 4). There is no basis for such discovery. XY already has access to the facts available to Intrexon <u>and</u> to facts not available to Intrexon. XY does not need help from Intrexon and it is not entitled to Intrexon's research or its fruit.

Intrexon's <u>opinions</u> or conclusions about facts it may have gathered are even more remote. Anyone may have an opinion. Intrexon is not a party, and despite the pending acquisition of TOG, Intrexon is essentially no different than any investor or analyst who marshals facts to reach an opinion about a company. XY is not entitled to fish for such opinions from Intrexon or anyone else. Government review of the TOG acquisition does not entitle XY to see that review. In fact, HSR submissions in particular are emphatically secret. *See* 15 U.S.C. §18a(h). Such private opinions are privileged and protected from disclosure. *See* Fed. R. Civ. P. 45(d)(3). They are also irrelevant. TOG cannot make a case against XY, nor can XY defend itself, based on any opinions of Intrexon.

# ARGUMENT

## I.    Legal Standard

The Federal Rules of Civil Procedure provide that "the court for the district where compliance is required *must* quash or modify a subpoena that … (i) fails to allow a reasonable time to comply; . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies or (iv) subjects a person to undue burden." *See* Fed. R. Civ. P. 45(d)(3)(A)(i), and (iii)-(iv) (emphasis added).  The court *may* quash or modify a subpoena if it requires (i) disclosing a trade secret or other confidential research, development, or commercial information; or (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party." *See* Rule Fed. R. Civ. P. 45(d)(3)(B)(i)-(ii). (emphasis added). These protections apply to the disputed Subpoena.

## II.    Plaintiffs Are Not Entitled To the Discovery They Demand.

There are numerous grounds for quashing the Subpoena.

### A.    The Subpoena Seeks Irrelevant Discovery And Imposes An Undue Burden on Intrexon

A subpoena imposes an undue burden when the burden of providing the documents outweighs the need for it. *See North Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51 (D.D.C. 2005).  The court balances the burden imposed by the subpoena, the relevance of the information sought to the claims or defenses at issue, the breadth of the discovery request, and the litigant's need for the information. *See Id.*, 231 F.R.D. at 51.  Courts also consider whether the discovery is unreasonably cumulative or duplicative and whether it is obtainable from some other source that is more convenient, less burdensome, or less expensive. *See Watts v. Secs. and*

*Exchange Comm'n*, 482 F.3d 501, 509 (D.C. Cir. 2007). Subpoenas seeking publicly available documents should be quashed on that basis. *See Automated Solutions Corp. v. Paragon Data Sys.*, 231 Fed. Appx. 495, 496-97 (7th Cir. Ill. 2007). Likewise for subpoenas seeking information from a non-party that is available from a party. *See Zoological Soc'y of Buffalo, Inc. v. Carvedrock, LLC*, 2013 U.S. Dist. LEXIS 148340, *8-9 (W.D.N.Y. Oct. 15, 2013). There is no discovery benefit, and the burden is undue, particularly for a non-party, when the information sought in the subpoena is highly confidential and is not relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1). *See also Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1324-28 (Fed. Cir. 1990); *Meyer v. A&A Logistics*, 2014 U.S. Dist. LEXIS 100625, *16 (N.D. Ill. 2014); *Viskase v. World Pac*, 2010 U.S. Dist. LEXIS 93991 (N.D. Ill. Sept. 9, 2010).

The relevancy standard for discovery is whether the requested information is "relevant to any party's claim" or "to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b). Courts do not endorse "fishing expeditions" and should tailor discovery to the issues involved in the particular case. *See United States v. Kellogg Brown & Root Servs.*, 284 F.R.D. 22, 37 (D.D.C. 2012) (citation omitted). *See also CFTC v. McGraw Hill Cos. (In re Application to Enforce Admin. Subpoena)*, 390 F. Supp. 2d 27, 35 (D.D.C. 2005) (unreasonable to search for "data that may or may not reside in the files" of companies).

Here, the Subpoena to third-party Intrexon is unduly burdensome in the first place because it is directed to the wrong party. XY seeks specific HSR 4(c) Documents and related correspondence concerning Intrexon's acquisition of TOG "as called for" by the HSR Act and "as contained in" the HSR 4(c) Documents. Subpoena at 6 (Exhibit 1). Any such documents were prepared and submitted by Intrexon's ultimate parent, <u>not</u> Intrexon, and are <u>not</u> in the custody and control of Intrexon. *See* 15 U.S.C. §18(a); 16 C.F.R. §801.1(a)(3) and §801.1(b);

Lehr Declaration at ¶5-9.  Intrexon does not have the requested documents.  It is not the entity

from which such documents might be sought.  Accordingly, the Subpoena should be quashed.

Furthermore, non-party HSR 4(c) Documents are not relevant to any claims or

counterclaims in the underlying litigation.  These documents address the potential impact, from a

regulatory perspective, of a merger with TOG in view of the holdings of Intrexon's ultimate

parent.  *See* notes 2 and 5, *supra*.  Even if Intrexon had such documents, they have no bearing on

whether or not XY and Inguran misused patents, have a monopoly in a relevant market, or

engaged in anticompetitive conduct.  *See* Answer and Counterclaims, at 18 (Exhibit 3).

A third-party's private view of market conditions, whether or not they concern TOG or

Intrexon, and whether or not they are required to be confidentially shared with government

regulators, will <u>not</u> reasonably lead to admissible evidence for or against XY, nor reasonably

confirm or deny any positions taken by TOG.[7]  *See Kellogg*, 284 F.R.D. at 37-38 (refusing

discovery relating to other parties that is not demonstrably relevant).  XY's speculation about

what may or may not be contained in a non-party's files, and whether it will find itself

mentioned, is not a proper basis for intrusive third-party discovery.  *CFTC*, 390 F. Supp. 2d. at

35.  XY "is simply seeking to examine general categories of documents," *i.e.*, third-party market

research and third-party correspondence, "with the hope that they contain information that may

be helpful to his defense."  *United States v. Libby*, 432 F. Supp. 2d 26, 35 (D.D.C. 2006).[8]

Another factor in favor of quashing the Subpoena is that alternative and less burdensome

means are available to obtain the relevant information.  Any possible non-privileged and relevant

---

[7] Even if third-party HSR documents might hypothetically contain a difference of opinion with
XY or TOG as to market conditions, such third-party views carry no weight and are hearsay.
This is <u>not</u> a situation where HSR information sought from non-party Intrexon could contradict
positions of defendant TOG in the lawsuit.  Intrexon does not speak for TOG, did not collaborate
with TOG on any HSR submissions, and has no knowledge of TOG's HSR submissions.

[8] *Libby* concerned a criminal subpoena, but the reasoning applies equally to a civil subpoena.

responsive information that Intrexon possesses is cumulative of information in the custody of TOG and XY.  XY is admittedly seeking the same information from non-party Intrexon that it is seeking and can obtain from defendant TOG.  Exhibit 4, at 5.  While reserving its right to object to specific discovery requests or appropriately to withhold certain documents, TOG did not oppose XY's motion to seek this additional discovery.  *Id.* at 1.  TOG and XY have essentially agreed to fold these new requests into their pre-existing discovery plan, meaning that that alternative means exist to obtain the information.  Intrexon's HSR documents would be irrelevant, and there are none.  If relevant, XY already has a path to TOG's HSR documents and to TOG's correspondence with Intrexon, and that path is through party discovery, not third part discovery.  *See*, *Educ. Fin. Council v. Oberg*, 2010 U.S. Dist. LEXIS 102221, *8-9 (D.D.C. Mar. 8, 2010) (undue burden when many if not all communications are available from the defendants to the underlying litigation).

For these reasons, XY has no need to look to Intrexon for any information in aid of its litigation against TOG.  First, XY can, should, and already has, sought this information elsewhere, especially from party TOG.  XY can also mine the same public sources available to Intrexon.  There is no good reason to burden non-party Intrexon with a request for information that is cumulative and that is just as readily and publically available to XY as it is to Intrexon.  Second, Intrexon's view of market conditions surrounding its acquisition of TOG, whether or not embodied in an HSR submission, is not relevant to claims in the underlying litigation.  XY should not be permitted to fish in Intrexon's waters for hypothetical gain.  Intrexon is not an expert retained by TOG who is subject to cross-examination by XY.  Intrexon's market research cannot reasonably carry any weight in the litigation. XY does not need it and is not entitled to it.

On the other hand, disclosure would be extremely burdensome and dangerous to Intrexon and its business. On balance, the third-party discovery XY seeks from Intrexon should be refused.

**B.      The Subpoena Improperly Requires Disclosure of Information Protected By Privilege**

Much of the requested information, even assuming it is available and somehow relevant, is protected by the attorney-client privilege and/or the protections of the work product doctrine.

"The attorney-client privilege protects confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *See Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194, 206 (D.D.C. 2007) (internal citations omitted). This court recognizes that "fact work product" can only be produced if the party seeking discovery can show substantial need *and* that they are unable to obtain the substantial equivalent of the materials by other means. *See In re Vitamins Antitrust Litig.*, 211 F.R.D. 1, 4 (D.D.C. 2002) (citing R. Civ. P. 26(b)). Opinion work product, which contains the opinions, judgments, and thought processes of counsel, "receives almost absolute protection from discovery" that can only be overcome by "extraordinary justification." *See id.*

HSR documents, as sought by XY, were very likely, if not certainly, prepared by and with the advice and assistance of counsel, comprise privileged opinions, and are attorney work product. Such documents reflect "confidential communications between an attorney and [her] client relating to a legal matter for which the client has sought professional advice." *See Reliant*, 520 F. Supp. 2d at 206. Moreover, the information sought in the Subpoena implicates the thought processes, opinions, and judgments of counsel in formulating their approach to pre-merger government oversight of a proposed acquisition. All of this is protected by the work product doctrine. *See* Fed. R. Civ. P. 26(b)(3). To the extent the Subpoena calls for such

information, it should be quashed, or alternatively, it should be modified to expressly exclude such information from any request.

Moreover, Intrexon does not uniquely possess relevant, non-privileged information. As for the HSR 4(c) documents, Intrexon does not have them. As for correspondence with TOG about the HSR 4(c) Documents, there is none. As for correspondence with TOG that mentions XY or Inguran, the Subpoena is fishing and anyway such information (if any) can be obtained from TOG. As for Intrexon's own market research developed for its own business purposes, such information is not relevant and anyway is not within the Subpoena. Ultimately, even if Intrexon *did* possess any non-privileged information within the Subpoena, such information would be otherwise available to XY directly from TOG.

The Subpoena is not directed to non-privileged information that is properly discoverable from Intrexon instead of from TOG or public sources, and it should be quashed.

### C.    The Subpoena Improperly Demands Trade Secrets, Confidential Research and Commercial Information, and Expert Information.

The Subpoena is particularly intrusive because it endeavors, without a compelling justification, to obtain some of Intrexon's most precious business information.

A third-party Subpoena should be quashed when it requires disclosing a trade secret or other confidential research, development, or commercial information. A Subpoena that demands protected expert information, as this one does, should likewise be quashed. *See* Fed. R. Civ. P. 45(d)(3)(B)(i-ii).

A particularly relevant case is *In re Wheat Farmers Antitrust Class Action Litigation*, 1983 U.S. Dist. LEXIS 18788 (D.D.C. Mar. 4, 1983). There, a group of grain companies were investigated by the Federal Trade Commission ("FTC") and also were defendants in an Oklahoma class action suit alleging price fixing in violation of the antitrust laws. The antitrust

Plaintiff subpoenaed non-party FTC for documents submitted to it by defendants. "Defendants

submitted information to the FTC, pursuant to its investigative request (which they say, without

contradiction, reveals their financial condition and marketing strategies) with the expectation that

it would remain confidential." *Id.* at *4.  The FTC objected to the subpoena in this court, and

defendants later joined in the ancillary proceeding to object on their own behalf.

The  court concluded:

> [P]laintiff is not entitled to production of the documents.  The FTC
> Act, by its terms, prohibits public disclosure of trade secrets or
> commercial or financial information obtained from any person and
> which is privileged or confidential.    15 U.S.C. §§ 46(f), 57b-
> 2(d)(1)(B).    Private  parties  are  not  permitted  to  discover
> information provided to the government by third parties when its
> disclosure would contravene a  strong statutory policy of non-
> disclosure, Baldridge v. Shapiro, 102 S.Ct. 1103 (1982), and the
> FTC Act embodies just such a policy.

*Id.* at *5.  The court also directed Plaintiff to seek relevant documents from the parties before

seeking third party discovery. Id.

Here, XY pursues information relating to government submissions under the HSR Act.

Such information by its nature reveals financial conditions and marketing strategies and consists

of confidential trade secrets, commercial information, and financial information.   It also

comprises work product of in-house and/or out-sourced experts, *e.g.*, in economics, engaged

privately and confidentially, and not retained for litigation.  It further comprises work product of

attorneys.  All of this is protected by Rule 45(d).  HSR documents in particular are submitted to

the government with a very high expectation of secrecy.  Disclosure is prohibited by the HSR

Act, 15 U.S.C. § 18a(h).

In *Pharm. Research & Mfrs. of Am. v. FTC*, 2014 U.S. Dist. LEXIS 73822 (D.D.C. May 30, 2014), this court recognized the importance of protecting the confidentiality of this type of information pursuant to §18a(h):

> Although this little-analyzed provision contains an "exception" for "any administrative or judicial action or proceeding," no court has broached the question of whether HSR filings may be disclosed *when the HSR filing itself is not the subject of an "administrative or judicial action or proceeding," but is tangentially related to a separate proceeding.* Indeed, few courts have interpreted this provision of the HSR Act at all. The two cardinal cases discussing § 18a(h), issued by the Fifth and Second Circuits, have interpreted this provision in the context of disclosing HSR filings to state law enforcement officials, and both Circuits concluded that the FTC shall not disclose the information, even on a "confidential" basis. See Mattox, 752 F.2d at 122; Lieberman v. FTC, 771 F.2d 32, 38 (2d Cir. 1985).

*Id.* at *102-103 (emphasis added). In *dicta*, the court concluded that disclosure for tangential purposes would likely be barred by §18a(h), "in light of the sensitive trade information contained in HSR filings, and given longstanding FTC practice keeping similar information confidential." *Id.* at *105.

For all of the same reasons, a third-party like Intrexon (or its ultimate parent) should not be made to disclose HSR information that the FTC, also a third party, would not be compelled to disclose. Even assuming Intrexon had such HSR information, the underlying litigation is about patents, contracts, and alleged anti-competitive conduct by XY. It is not about Intrexon or its ultimate parent. It is not about their financial condition, their market evaluations, the work product of their experts and attorneys, or their sensitive trade information.

Furthermore, XY is not entitled to use the HSR Act as a mechanism to fish for third-party comments about its adversary or about itself, which may or may not actually appear in a third-party's HSR submission.

### D.     The Subpoena Failed to Allow Reasonable Time for Compliance

A subpoena fails to allow a reasonable time for compliance when the timing is unreasonable under the circumstances. *Schulman v. Saloon Bev., Inc.*, 2014 U.S. Dist. LEXIS 93070, *34-35 (D. Vt. July 9, 2014). "Although Rule 45 does not define 'reasonable time,' many courts have found fourteen days from the date of service as presumptively reasonable." *Id.* (quoting *Brown v. Hendler,* No. 09 Civ. 4486 (RLE), 2011 U.S. Dist. LEXIS 9476, 2011 WL 321139, at *2 (S.D.N.Y. Jan. 31, 2011)). Likewise, "Federal courts have also found compliance times of eight and seven days not to be reasonable" (quoting *Brown, id.* (citing cases)).

Intrexon received the Subpoena on July 21, 2014, and are required to comply seven business days later, on July 30, 2014. The discovery requests in the Subpoena potentially involve Intrexon's most sensitive commercial information, at the core of its business and competitive strategies. To comply, Intrexon would require sufficient time to review the documents and to negotiate and enter into an appropriate protective order with XY. Intrexon would also require sufficient time to prepare one or more witnesses for deposition.

For these reasons, the Subpoena should be quashed for failing to allow Intrexon a reasonable time to comply.

### III.    Alternatively, The Court Should Modify The Subpoena And Grant A Protective Order to Intrexon.

Rule 45(d) empowers a district court to appropriately modify a Subpoena. Rule 26(c) empowers the court to issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. *Redfish Key Villas Condo. Ass'n v. Amerisure Ins. Co.*, 2014 U.S. Dist. LEXIS 13028, 5-6 (M.D. Fla. Feb. 3, 2014) (citing *Farnsworth v. Procter & Gamble, Co.*, 758 F.2d 1545, 1548 (11th Cir. 1985)).

If the Subpoena is not quashed, it should be modified to: (a) give Intrexon a reasonable time to comply; (b) provide for a negotiated protective order to safeguard Intrexon's confidential information; and (c) be strictly limited to facts (if any), that are uniquely in the possession of Intrexon, are not otherwise available to XY from public sources or from a litigating party, and are demonstrably relevant to XY's defense of the specific patent misuse and related antitrust counterclaims made by TOG in the pleadings of the underlying litigation.

## CONCLUSION

For all of the reasons given, Intrexon's Motion to Quash should be granted.

Dated:  July 30, 2014

Respectfully submitted,

*Attorneys for Defendant*
John R. Gerstein, DC Bar No. 913228
jack.gerstein@troutmansanders.com
Troutman Sanders, LLP
401 Ninth Street, N. W. Suite 1000
Washington, D.C. 20004-2134
Telephone: (202) 274-2950
Facsimile: (202) 274-2994

Of Counsel:

Robert Schaffer
Joseph R. Robinson
Troutman Sanders LLP
405 Lexington Avenue
New York, NY 10174
Telephone: (212)704-6000
Facsimile:  (212)704-6288

# EXHIBIT 1

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the
District of Colorado

| | |
|---|---|
| XY, LLC | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.   1:13-CV-00876-WJM-BNB |
| Trans Ova Genetics, L.C. | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                    Intrexon Corporation
                         20374 Seneca Meadows Parkway, Germantown, MD  20876
                                *(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:
The topics identified in Schedule A

| Place: Akin Gump, Robert S. Strauss Building 1333 New Hampshire Avenue, N.W. Washington, DC 20036-1564 | Date and Time: 07/30/2014 9:00 am |
|---|---|

The deposition will be recorded by this method:     stenographic means and will be videotaped

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: The documents identified in Schedule B

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: July 14, 2014

         *CLERK OF COURT*

                                                        OR      Kirt S. O'Neill

         *Signature of Clerk or Deputy Clerk*                        *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*      XY, LLC
                                                    , who issues or requests this subpoena, are:

Kirt O'Neill, 300 Convent St. Suite 1600, San Antonio, TX 78205, 210-281-7026, koneill@akingump.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

[1]

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 1:13-CV-00876-WJM-BNB

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

[2]

AO 88A (Rev. 02-14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**

The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

[3]

## Schedule A

### XY, LLC AND INGURAN, LLC'S NOTICE DUCES TECUM OF DEPOSITION OF INTREXON CORPORATION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(6), Plaintiffs XY, LLC, and Inguran, LLC, d/b/a Sexing Technologies, by its attorneys, will take the oral deposition of Intrexon Corporation. The deposition will take place at the offices of Akin, Gump, Strauss, Hauer & Feld, LLP, Robert S. Strauss Building, 1333 New Hampshire Avenue, N.W., Washington, DC 20036-1564 before an officer duly authorized by law to administer oaths and record testimony. The testimony will be recorded by stenographic means and will be videotaped. The deposition will begin at 9:00 a.m. on July 30, 2014 and will continue from day to day until completed or adjourned. Intrexon Corporation shall identify and designate the person(s) to testify on Intrexon Corporation's behalf about each Areas of Examination Pursuant to Rule 30(b)(6) below.

### Definitions

1.      The terms "you," "your," and "Intrexon," mean Intrexon Corporation, and its affiliated companies, parent and subsidiary firms, divisions, branches, predecessors in interest, successors, assigns, current and former employees, officers, directors, agents, representatives, joint venturers, attorneys, accountants, investigators, consultant, and others acting for or on behalf of any of the foregoing persons or entities.

2.      The term "XY" refers to XY, LLC and its affiliated companies, parent and subsidiary firms, divisions, branches, predecessors in interest, successors, assigns, current and former employees, officers, directors, agents, representatives, joint venturers, attorneys,

[4]

accountants, investigators, consultant, and others acting for or on behalf of any of the foregoing persons or entities.

3.     The term "Inguran" refers to Inguran, LLC d/b/a Sexing Technologies and its affiliated companies, parent and subsidiary firms, divisions, branches, predecessors in interest, successors, assigns, current and former employees, officers, directors, agents, representatives, joint venturers, attorneys, accountants, investigators, consultant, and others acting for or on behalf of any of the foregoing persons or entities.

4.     The term "Trans Ova" refers to Trans Ova Genetics, LC and its affiliated companies, parent and subsidiary firms, divisions, branches, predecessors in interest, successors, assigns, current and former employees, officers, directors, agents, representatives, joint venturers, attorneys, accountants, investigators, consultant, and others acting for or on behalf of any of the foregoing persons or entities.

5.     The term "HSR Act 4(c) Documents" refers to documents identified in Item 4(c) of the Instructions to the Notification and Report Form for Certain Mergers and Acquisitions issued in connection with the Hart-Scott-Rodino Antitrust Improvement Act of 1976 (as amended).

6.     The term "communication" means any manner or form of exchanging or transmitting information (in the form of facts, ideas, inquiries, or otherwise).

7.     The term "document" shall have its customary, broad meaning within the full range allowed by Rules 33 and 34 of the Federal Rules of Civil Procedure, including, without limitation, any written, printed, typed, recorded, filmed, or graphic matter, however produced or

[5]

reproduced, and includes paper documents, electronic data, and audio or visual media. A draft or non-identical copy is a separate document within the meaning of this term. Included in the definition of documents as used herein are files, file folders, books, and their contents, which should be produced together with the documents they contain.

8.      The terms "concerning," "relating to," and "related to," mean concerning, relating to, in connection with, dealing with, commenting on, responding to, referring to, pertaining to, identifying, describing, involving, reflecting, embodying, evidencing, stating, summarizing, substantiating, refuting, containing, incorporating, mentioning, comprising, or constituting, directly or indirectly.

9.      The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of each discovery requests all responses that might otherwise be construed to be out of its scope.

10.     Except as otherwise noted herein, the use of the singular form of any word includes the plural and vice versa.

### Areas of Examination Pursuant to Rule 30(b)(6)

In accordance with Rule 30(b)(6), Intrexon, is required to designate one or more of its officers, directors, managing agents, or other persons to testify on its behalf with respect to matters known or reasonably available to Intrexon, regarding the subjects described below:

1.      All studies, surveys, analyses and reports that were prepared by or for any Intrexon officers, directors, or employees exercising similar functions, for the purpose of evaluating or analyzing Intrexon's pending acquisition of Trans Ova with respect to market shares, competition, competitors, markets, and potential for sales growth or expansion into product or geographic markets, as called for under the Hart-Scott-Rodino Antitrust Improvements Act (i.e., evaluation and analysis contained in HSR Act 4(c) Documents).

[6]

2.     Any correspondence between Trans Ova and Intrexon concerning any of the documents and things identified in Area of Examination No. 1 above.

3.     Any correspondence between Trans Ova and Intrexon concerning XY, Inguran, or both.

## Schedule B

**Definitions:**

1.      "Intrexon" means and refers to Intrexon Corporation, and its affiliated companies, parent and subsidiary firms, divisions, branches, predecessors in interest, successors, assigns, current and former employees, officers, directors, agents, representatives, joint venturers, attorneys, accountants, investigators, consultant, and others acting for or on behalf of any of the foregoing persons or entities.

2.      "Trans Ova" means and refers to Trans Ova Genetics LC, and its affiliated companies, parent and subsidiary firms, divisions, branches, predecessors in interest, successors, assigns, current and former employees, officers, directors, agents, representatives, joint venturers, attorneys, accountants, investigators, consultant, and others acting for or on behalf of any of the foregoing persons or entities.

3.      "XY" means and refers to XY, LLC, and its affiliated companies, parent and subsidiary firms, divisions, branches, predecessors in interest, successors, assigns, current and former employees, officers, directors, agents, representatives, joint venturers, attorneys, accountants, investigators, consultant, and others acting for or on behalf of any of the foregoing persons or entities.

4.      "Inguran" means and refers to Inguran LLC, and its affiliated companies, parent and subsidiary firms, divisions, branches, predecessors in interest, successors, assigns, current and former employees, officers, directors, agents, representatives, joint venturers, attorneys, accountants, investigators, consultant, and others acting for or on behalf of any of the foregoing persons or entities.

5.      "HSR Act 4(c) Documents" means documents identified in Item 4(c) of the Instructions to the Notification and Report Form for Certain Mergers and Acquisitions issued in connection with the Hart-Scott-Rodino Antitrust Improvement Act of 1976 (as amended).

**Document Requests:**

1.      All studies, surveys, analyses and reports that were prepared by or for any Intrexon officers, directors, or employees exercising similar functions, for the purpose of evaluating or analyzing Intrexon's pending acquisition of Trans Ova with respect to market shares, competition, competitors, markets, and potential for sales growth or expansion into product or geographic markets, as called for under the Hart-Scott-Rodino Antitrust Improvements Act (i.e., evaluation and analysis contained in HSR Act 4(c) Documents).

2.      Any correspondence between Trans Ova and Intrexon concerning any of the documents and things identified in Document Request No. 1.

3.      Any correspondence between Trans Ova and Intrexon concerning XY, Inguran, or both.

[8]

**EXHIBIT 2**

UNITED STATES DISTRICT COURT
DENVER, COLORADO
12:47 pm, Nov 21, 2013
JEFFREY P. COLWELL, CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| XY, LLC, | §<br>§ |
|     Plaintiff/Counter Defendant, | §<br>§ |
| v. | §<br>§ |
| TRANS OVA GENETICS, LC, | §<br>§   Civil Action No. 1:13-cv-00876-WJM-BNB |
|     Defendant/Third Party<br>    Plaintiff/Counter Claimant | §<br>§<br>§ |
| v. | §<br>§ |
| INGURAN, LLC | §<br>§ |
|     Third Party Defendant | § |

### SECOND AMENDED COMPLAINT

Plaintiff XY, LLC ("XY") files this Second Amended Complaint for damages against Trans Ova Genetics, LC ("Defendant"). In support of its Second Amended Complaint, XY shows as follows:

### THE PARTIES

1.    XY is a limited liability company duly organized and existing under the laws of Delaware, having an office and place of business at 9200 Broadway, Suite 111, San Antonio, Texas 78217.

2.    Defendant, Trans Ova Genetics, LC, is an Iowa limited liability company with a principal place of business located at 2938 380th Street, Sioux Center, Iowa 51250. Defendant may be served by delivering a copy of the complaint to its registered agent for service of process, Chad Feenstra, 2938 380th Street, Sioux Center, Iowa 51250.

## NATURE OF THE ACTION

3.      This is a civil action for the infringement of United States Patent No. 7,820,425,

United States Patent No. 6,357,307, United States Patent No. 6,604,435, United States Patent No.

6,782,768, United States Patent No. 6,263,745, United States Patent No. 7,713,687, United

States Patent No. 7,771,921, United States Patent No. 6,149,867, United States Patent No.

6,524,860, United States Patent No. 7,195,920, and United States Patent No. 8,569,053 (the

"Asserted Patents") under the Patent laws of the United States, 35 U.S.C. § 271 *et seq.*

4.      XY is also seeking a declaratory judgment and order that the Commercial License

Agreement between XY and Defendant dated April 16, 2004 as modified by the Addendum of

May 17, 2005 and the Letter Agreement dated March 9, 2005 (collectively referred to as the

"Agreement") was terminated pursuant to its termination provisions on November 20, 2007

based on several material and incurable Trans Ova breaches.  In the alternative, XY is seeking a

declaratory judgment and order that the Agreement expired according to its terms on April 16,

2009.

5.      XY is also seeking damages under state and common law arising from breach of

contract due to numerous material Trans Ova breaches of the Agreement for any period the

Agreement is determined to be in effect.

## JURISDICTION

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and

1338(a) because this action arises under the patent laws of the United States, including 35 U.S.C.

§ 271 *et seq.*  This Court also has jurisdiction over this action for declaratory relief under 28

U.S.C. §§ 2201 and 2202 because this action involves an actual controversy between the parties

regarding whether the Agreement was terminated, as evidenced by Defendant's original answer

and proposed counterclaims.  This Court has personal jurisdiction over the Defendant in that it

2

has committed acts within Texas and this judicial district giving rise to this action and the Defendant has established minimum contacts with the forum such that the exercise of jurisdiction over the Defendant would not offend traditional notions of fair play and substantial justice.

## VENUE

7.     Defendant has committed acts within this judicial district giving rise to this action and does business in this district, having a location at 1233 State Hwy 7, Centerville, Texas 75833.   Defendant has committed acts of patent infringement at its Centerville location, including offering and performing livestock reproductive services using XY's patented methods, apparatuses, and chemical compositions for the sex-selection of sperm cells.  Venue is proper in this district pursuant to 28 U.S.C. §§1391(b), 1391(c), and 1400(b).

## FACTUAL BACKGROUND

### *The Parties and the Agreement*

8.     XY researches, develops, and commercializes technology for sex selection of non-human mammals, such as cattle and horses.  This technology typically involves the use of a specialized and proprietary flow cytometer to separate individual sperm cells that carry an X chromosome (for producing female offspring) from those that carry a Y chromosome (for producing male offspring) based on differences in DNA content between the cells.   Once separated using XY's proprietary systems and methods, the sorted sperm cells are typically collected in artificial insemination straws ("Straws") that contain millions of sex selected sperm cells.  The Straws may be stored, frozen, or used for the production of in-vitro or in-vivo fertilized embryos.  XY owns patents (the "XY Patents") and other proprietary rights on many valuable technological advances in the field of flow cytometer-based sex selection, including rights in related devices, techniques, and services.

3

9.      Defendant provides animal husbandry and reproductive services to cattle breeders, including embryo transfer and in-vitro fertilization of bovine embryos. Since execution of the Agreement, Trans Ova has added sales of Straws of sex selected sperm, sales of embryos or bovines artificially inseminated with sex selected sperm, sex selected embryo transfer services, and sex selected in-vitro fertilization services to its goods and services, all produced or facilitated using XY's proprietary technology.

10.     In the Agreement, XY granted Trans Ova a non-exclusive license to use certain XY intellectual property, including the Asserted Patents, in a limited field of use, subject to a variety of conditions. *See* Commercial License Agreement (attached as SEALED Exhibit A). Some of the relevant limitations and provisions of the Agreement generally included the following:

- Limitations on particular customers to whom Trans Ova was permitted to sell Straws (*see* Agreement, 2.1(a));

- Limitations on the number of Straws Trans Ova was permitted to sell each year (*see* Agreement, 2.1(a));

- Limitations on Trans Ova's ability to sublicense (*see* Agreement, 2.6);

- Requirement that Trans Ova pay royalties (*see* Agreement, 1.9, 1.12, and 3.1.1(b));

- Requirement that Trans Ova obtain approval collateral materials from XY (*see* Agreement, 3.8);

- Requirement that Trans Ova use approved instruments for its sorting services (*see* Agreement, 3.2);

4

- Requirement that Trans Ova provide XY a first right of refusal to purchase flow cytometry equipment (*see* Agreement, 3.2).

### *XY's Termination of the Agreement Based on Certain Trans Ova Material and Incurable Breaches*

11. During the term of the Agreement, Trans Ova materially and incurably breached the Agreement, including by manufacturing, offering-for-sale, or selling licensed products outside the licensed field of use. Trans Ova's breaches included, but were not limited to: (i) breach of the limitation on particular customers to whom Trans Ova was permitted to sell Straws; (ii) breach of the limitation on the number of Straws Trans Ova was permitted to sell each year; and (iii) breach of the limitations on Trans Ova's ability to grant sublicenses. These are material breaches that cannot be cured and, accordingly, serve as a basis for immediate termination of the Agreement.

12. On November 20, 2007, after learning of the above breaches, XY sent a written Notice of Termination to Trans Ova that complied with the termination provisions of the Agreement. *See* Notice of Termination of Commercial License Agreement from Maurice Rosenstein, XY, Inc., to David Faber, Trans Ova Genetics (Nov. 20, 2007) (the "Notice of Termination") (attached as SEALED Exhibit B). XY's Notice of Termination had the effect of immediately terminating the Agreement.

13. XY declined the royalty payments paid by Trans Ova pursuant to the royalty payment reporting period immediately preceding the Notice of Termination. Since the Agreement was terminated, XY has continued to decline all further attempted royalty payments in light of the termination of the Agreement.

14. Since 2007, XY has repeatedly attempted to enter a new, mutually beneficial, license agreement with Trans Ova to resolve the parties' dispute in good faith. During this time,

5

Trans Ova has shown some interest in entering a new agreement as well. For example, in January 2008 Trans Ova filed a defective arbitration demand—purportedly seeking a determination that the Agreement had not been duly and rightfully terminated on November 20, 2007—but Trans Ova chose not to pursue the arbitration so that the parties' principals could attempt to resolve their dispute without arbitration. During the period 2009 through 2011, the parties exchanged various proposals for a new agreement, including, but not limited to, drafts of a new license agreement. Unfortunately, despite XY's repeated good faith efforts, Trans Ova continues to delay or avoid resolution of this dispute and continues to operate as if the Agreement were not terminated.

### *Defendant's Infringement of XY's Patents*

15.     After termination of the Agreement, Defendant has continued to practice XY's patented inventions and has therefore infringed, and continues to infringe, the Asserted Patents, including, without limitation, through Defendant's use of flow cytometers or other similar apparatuses for sex selection of sperm cells and the sale of semen produced using such apparatuses; Defendant's use of fluids and other chemical compositions designed for use in flow cytometry-based sex selection; and Defendant's use of flow cytometry-based sex selection protocols and procedures.

### COUNT I — INFRINGEMENT OF U.S. PATENT NO. 7,820,425

16.     The above paragraphs are incorporated by reference as if fully restated herein.

17.     On October 26, 2010, United States Patent No. 7,820,425 (the "'425" Patent) was duly and legally issued for an invention entitled "Method of Cryopreserving Selected Sperm Cells." A true and correct copy of the '425 Patent is attached hereto as Exhibit C. XY is the Owner/Assignee of the '425 Patent and has the right to sue on and seek enforcement of the '425

6

Patent. XY has owned the '425 Patent at all times relevant to this complaint and still owns the
'425 patent.

18.     Based on the conduct of Defendant described in paragraph 9 above, Defendant
has infringed and continues to infringe the '425 Patent, either directly or by contributory
infringement or by inducing infringement.   With regard to Defendant's indirect infringement, the
direct infringers include, but are not limited to, Defendant's employees, users, and customers.
Defendant is liable for infringement of the '425 Patent pursuant to 35 U.S.C. § 271.

19.     Upon information and belief, Defendant has been aware of the '425 Patent since
the date it issued and has been aware of the application that matured into the '425 Patent since at
least as early as the date the application maturing into the '425 Patent was published, and
Defendant's continued infringement of the '425 Patent is and has been willful and deliberate.

20.     Upon information and belief, Defendant's acts of willful infringement have
caused damage to XY, and XY is entitled to recover from Defendant the damages sustained by
XY as a result of Defendant's wrongful acts, and such damages should be increased pursuant to
35 U.S.C. § 284, in an amount subject to proof at trial.

## <u>COUNT II — INFRINGEMENT OF U.S. PATENT NO. 6,357,307</u>

21.     The above paragraphs are incorporated by reference as if fully restated herein.

22.     On March 19, 2002, United States Patent No. 6,357,307 (the "'307" Patent) was
duly and legally issued for an invention entitled "System and Method of Flow Cytometry and
Sample Handling."  A true and correct copy of the '307 Patent is attached hereto as Exhibit D.
XY is the Owner/Assignee of the '307 Patent and has the right to sue on and seek enforcement of
the '307 Patent.  XY has owned the '307 Patent at all times relevant to this complaint and still
owns the '307 patent.

7

23.     Based on the conduct of Defendant described in paragraph 9 above, Defendant has infringed and continues to infringe the '307 Patent, either directly or by contributory infringement or by inducing infringement.  With regard to Defendant's indirect infringement, the direct infringers include, but are not limited to, Defendant's employees, users, and customers. Defendant is liable for infringement of the '307 Patent pursuant to 35 U.S.C. § 271.

24.     Upon information and belief, Defendant has been aware of the '307 Patent since at least as early as the effective date of the Agreement, and Defendant's continued infringement of the '307 Patent is and has been willful and deliberate.

25.     Upon information and belief, Defendant's acts of willful infringement have caused damage to XY, and XY is entitled to recover from Defendant the damages sustained by XY as a result of Defendant's wrongful acts, and such damages should be increased pursuant to 35 U.S.C. § 284, in an amount subject to proof at trial.

## COUNT III — INFRINGEMENT OF U.S. PATENT NO. 6,604,435

26.     The above paragraphs are incorporated by reference as if fully restated herein.

27.     On August 12, 2003, United States Patent No. 6,604,435 (the "'435" Patent) was duly and legally issued for an invention entitled "Low Acceleration Method of Flow Cytometry." A true and correct copy of the '435 Patent is attached hereto as Exhibit E.  XY is the Owner/Assignee of the '435 Patent and has the right to sue on and seek enforcement of the '435 Patent.  XY has owned the '435 Patent at all times relevant to this complaint and still owns the '435 patent.

28.     Based on the conduct of Defendant described in paragraph 9 above, Defendant has infringed and continues to infringe the '435 Patent, either directly or by contributory infringement or by inducing infringement.  With regard to Defendant's indirect infringement, the

8

204073305 v6

direct infringers include, but are not limited to, Defendant's employees, users, and customers. Defendant is liable for infringement of the '435 Patent pursuant to 35 U.S.C. § 271.

29.    Upon information and belief, Defendant has been aware of the '435 Patent since at least as early as the effective date of the Agreement, and Defendant's continued infringement of the '435 Patent is and has been willful and deliberate.

30.    Upon information and belief, Defendant's acts of willful infringement have caused damage to XY, and XY is entitled to recover from Defendant the damages sustained by XY as a result of Defendant's wrongful acts, and such damages should be increased pursuant to 35 U.S.C. § 284, in an amount subject to proof at trial.

## COUNT IV — INFRINGEMENT OF U.S. PATENT NO. 6,782,768

31.    The above paragraphs are incorporated by reference as if fully restated herein.

32.    On August 31, 2004, United States Patent No. 6,782,768 (the "'768" Patent) was duly and legally issued for an invention entitled "Flow Cytometer Nozzle." A true and correct copy of the '768 Patent is attached hereto as Exhibit F. XY is the Owner/Assignee of the '768 Patent and has the right to sue on and seek enforcement of the '768 Patent. XY has owned the '768 Patent at all times relevant to this complaint and still owns the '768 patent.

33.    Based on the conduct of Defendant described in paragraph 9 above, Defendant has infringed and continues to infringe the '768 Patent, either directly or by contributory infringement or by inducing infringement. With regard to Defendant's indirect infringement, the direct infringers include, but are not limited to, Defendant's employees, users, and customers. Defendant is liable for infringement of the '768 Patent pursuant to 35 U.S.C. § 271.

34.    Upon information and belief, Defendant has been aware of the '768 Patent since the date it issued and has been aware of the application that matured into the '768 Patent since at

204073305 v6

least as early as the effective date of the Agreement, and Defendant's continued infringement of the '768 Patent is and has been willful and deliberate.

35. Upon information and belief, Defendant's acts of willful infringement have caused damage to XY, and XY is entitled to recover from Defendant the damages sustained by XY as a result of Defendant's wrongful acts, and such damages should be increased pursuant to 35 U.S.C. § 284, in an amount subject to proof at trial.

## COUNT V — INFRINGEMENT OF U.S. PATENT NO. 6,263,745

36. The above paragraphs are incorporated by reference as if fully restated herein.

37. On July 24, 2001, United States Patent No. 6,263,745 (the "'745" Patent) was duly and legally issued for an invention entitled "Flow Cytometer Nozzle and Flow Cytometer Sample Handling Methods." A true and correct copy of the '745 Patent is attached hereto as Exhibit G. XY is the Owner/Assignee of the '745 Patent and has the right to sue on and seek enforcement of the '745 Patent. XY has owned the '745 Patent at all times relevant to this complaint and still owns the '745 patent.

38. Based on the conduct of Defendant described in paragraph 9 above, Defendant has infringed and continues to infringe the '745 Patent, either directly or by contributory infringement or by inducing infringement. With regard to Defendant's indirect infringement, the direct infringers include, but are not limited to, Defendant's employees, users, and customers. Defendant is liable for infringement of the '745 Patent pursuant to 35 U.S.C. § 271.

39. Upon information and belief, Defendant has been aware of the '745 Patent since at least as early as the effective date of the Agreement, and Defendant's continued infringement of the '745 Patent is and has been willful and deliberate.

10

40.     Upon information and belief, Defendant's acts of willful infringement have caused damage to XY, and XY is entitled to recover from Defendant the damages sustained by XY as a result of Defendant's wrongful acts, and such damages should be increased pursuant to 35 U.S.C. § 284, in an amount subject to proof at trial.

## COUNT VI — INFRINGEMENT OF U.S. PATENT NO. 7,713,687

41.     The above paragraphs are incorporated by reference as if fully restated herein.

42.     On May 11, 2010, United States Patent No. 7,713,687 (the "'687" Patent) was duly and legally issued for an invention entitled "System to Separate Frozen-Thawed Spermatozoa into X-Chromosome Bearing and Y-Chromosome Bearing Populations." A true and correct copy of the '687 Patent is attached hereto as Exhibit H. XY is the Owner/Assignee of the '687 Patent and has the right to sue on and seek enforcement of the '687 Patent. XY has owned the '687 Patent at all times relevant to this complaint and still owns the '687 patent.

43.     Based on the conduct of Defendant described in paragraph 9 above, Defendant has infringed and continues to infringe the '687 Patent, either directly or by contributory infringement or by inducing infringement. With regard to Defendant's indirect infringement, the direct infringers include, but are not limited to, Defendant's employees, users, and customers. Defendant is liable for infringement of the '687 Patent pursuant to 35 U.S.C. § 271.

44.     Upon information and belief, Defendant has been aware of the '687 Patent since the date it issued and has been aware of the application that matured into the '687 Patent since at least as early as the effective date of the Agreement, and Defendant's continued infringement of the '687 Patent is and has been willful and deliberate.

45.     Upon information and belief, Defendant's acts of willful infringement have caused damage to XY, and XY is entitled to recover from Defendant the damages sustained by

11

XY as a result of Defendant's wrongful acts, and such damages should be increased pursuant to 35 U.S.C. § 284, in an amount subject to proof at trial.

<u>**COUNT VII — INFRINGEMENT OF U.S. PATENT NO. 7,771,921**</u>

46. The above paragraphs are incorporated by reference as if fully restated herein.

47. On August 10, 2010, United States Patent No. 7,771,921 (the "'921" Patent) was duly and legally issued for an invention entitled "Separation Systems of Frozen-Thawed Spermatozoa into X-Chromosome Bearing and Y-Chromosome Bearing Populations." A true and correct copy of the '921 Patent is attached hereto as Exhibit I. XY is the Owner/Assignee of the '921 Patent and has the right to sue on and seek enforcement of the '921 Patent. XY has owned the '921 Patent at all times relevant to this complaint and still owns the '921 patent.

48. Based on the conduct of Defendant described in paragraph 9 above, Defendant has infringed and continues to infringe the '921 Patent, either directly or by contributory infringement or by inducing infringement. With regard to Defendant's indirect infringement, the direct infringers include, but are not limited to, Defendant's employees, users, and customers. Defendant is liable for infringement of the '921 Patent pursuant to 35 U.S.C. § 271.

49. Upon information and belief, Defendant has been aware of the '921 Patent since the date it issued and has been aware of the application that matured into the '921 Patent since at least as early as its date of publication, and Defendant's continued infringement of the '921 Patent is and has been willful and deliberate.

50. Upon information and belief, Defendant's acts of willful infringement have caused damage to XY, and XY is entitled to recover from Defendant the damages sustained by XY as a result of Defendant's wrongful acts, and such damages should be increased pursuant to 35 U.S.C. § 284, in an amount subject to proof at trial.

204073305 v6

## COUNT VIII — INFRINGEMENT OF U.S. PATENT NO. 6,149,867

51.     The above paragraphs are incorporated by reference as if fully restated herein.

52.     On November 21, 2000, United States Patent No. 6,149,867 (the "'867" Patent) was duly and legally issued for an invention entitled "Sheath Fluids and Collection Systems for Sex-Specific Cytometer Sorting of Sperm." A true and correct copy of the '867 Patent is attached hereto as Exhibit J. XY is the Owner/Assignee of the '867 Patent and has the right to sue on and seek enforcement of the '867 Patent. XY has owned the '867 Patent at all times relevant to this complaint and still owns the '867 patent.

53.     Based on the conduct of Defendant described in paragraph 9 above, Defendant has infringed and continues to infringe the '867 Patent, either directly or by contributory infringement or by inducing infringement. With regard to Defendant's indirect infringement, the direct infringers include, but are not limited to, Defendant's employees, users, and customers. Defendant is liable for infringement of the '867 Patent pursuant to 35 U.S.C. § 271.

54.     Upon information and belief, Defendant has been aware of the '867 Patent since at least as early as the effective date of the Agreement, and Defendant's continued infringement of the '867 Patent is and has been willful and deliberate.

55.     Upon information and belief, Defendant's acts of willful infringement have caused damage to XY, and XY is entitled to recover from Defendant the damages sustained by XY as a result of Defendant's wrongful acts, and such damages should be increased pursuant to 35 U.S.C. § 284, in an amount subject to proof at trial.

204073305 v6

## COUNT IX — INFRINGEMENT OF U.S. PATENT NO. 6,524,860

56.     The above paragraphs are incorporated by reference as if fully restated herein.

57.     On February 25, 2003, United States Patent No. 6,524,860 (the "'860" Patent) was duly and legally issued for an invention entitled "Methods for Improving Sheath Fluids and Collection Systems for Sex-Specific Cytometer Sorting of Sperm." A true and correct copy of the '860 Patent is attached hereto as Exhibit K. XY is the Owner/Assignee of the '860 Patent and has the right to sue on and seek enforcement of the '860 Patent. XY has owned the '860 Patent at all times relevant to this complaint and still owns the '860 patent.

58.     Based on the conduct of Defendant described in paragraph 9 above, Defendant has infringed and continues to infringe the '860 Patent, either directly or by contributory infringement or by inducing infringement. With regard to Defendant's indirect infringement, the direct infringers include, but are not limited to, Defendant's employees, users, and customers. Defendant is liable for infringement of the '860 Patent pursuant to 35 U.S.C. § 271.

59.     Upon information and belief, Defendant has been aware of the '860 Patent since at least as early as the effective date of the Agreement, and Defendant's continued infringement of the '860 Patent is and has been willful and deliberate.

60.     Upon information and belief, Defendant's acts of willful infringement have caused damage to XY, and XY is entitled to recover from Defendant the damages sustained by XY as a result of Defendant's wrongful acts, and such damages should be increased pursuant to 35 U.S.C. § 284, in an amount subject to proof at trial.

## COUNT X — INFRINGEMENT OF U.S. PATENT NO. 7,195,920

61.     The above paragraphs are incorporated by reference as if fully restated herein.

62.     On March 27, 2007, United States Patent No. 7,195,920 (the "'920" Patent) was duly and legally issued for an invention entitled "Collection Systems for Cytometer Sorting of

14

Sperm." A true and correct copy of the '920 Patent is attached hereto as Exhibit L. XY is the Owner/Assignee of the '920 Patent and has the right to sue on and seek enforcement of the '920 Patent. XY has owned the '920 Patent at all times relevant to this complaint and still owns the '920 patent.

63.     Based on the conduct of Defendant described in paragraph 9 above, Defendant has infringed and continues to infringe the '920 Patent, either directly or by contributory infringement or by inducing infringement. With regard to Defendant's indirect infringement, the direct infringers include, but are not limited to, Defendant's employees, users, and customers. Defendant is liable for infringement of the '920 Patent pursuant to 35 U.S.C. § 271.

64.     Upon information and belief, Defendant has been aware of the '920 Patent since the date it issued and has been aware of the application that matured into the '920 Patent since at least as early as the effective date of the Agreement, and Defendant's continued infringement of the '920 Patent is and has been willful and deliberate.

65.     Upon information and belief, Defendant's acts of willful infringement have caused damage to XY, and XY is entitled to recover from Defendant the damages sustained by XY as a result of Defendant's wrongful acts, and such damages should be increased pursuant to 35 U.S.C. § 284, in an amount subject to proof at trial.

### COUNT XI — INFRINGEMENT OF U.S. PATENT NO. 8,569,053

66.     The above paragraphs are incorporated by reference as if fully restated herein.

67.     On October 29, 2013, United States Patent No. 8,569,053 (the "'053" Patent) was duly and legally issued for an invention entitled "In-Vitro Fertilization Systems with Spermatozoa Separated into X-Chromosome and Y-Chromosome Bearing Populations." A true and correct copy of the '053 Patent is attached hereto as Exhibit M. XY is the Owner/Assignee

15

of the '053 Patent and has the right to sue on and seek enforcement of the '053 Patent. XY has

owned the '053 Patent at all times relevant to this complaint and still owns the '053 patent.

68.     Based on the conduct of Defendant described in paragraph 9 above, Defendant

has infringed and continues to infringe the '053 Patent, either directly or by contributory

infringement or by inducing infringement.   With regard to Defendant's indirect infringement, the

direct infringers include, but are not limited to, Defendant's employees, users, and customers.

Defendant is liable for infringement of the '053 Patent pursuant to 35 U.S.C. § 271.

69.     Upon information and belief, Defendant has been aware of the '053 Patent since

the date it issued and has been aware of the application that matured into the '053 Patent since at

least as early as the effective date of the Agreement, and Defendant's continued infringement of

the '053 Patent is and has been willful and deliberate.

70.     Upon information and belief, Defendant's acts of willful infringement have

caused damage to XY, and XY is entitled to recover from Defendant the damages sustained by

XY as a result of Defendant's wrongful acts, and such damages should be increased pursuant to

35 U.S.C. § 284, in an amount subject to proof at trial.

## COUNT XII — DECLARATORY JUDGMENT THAT THE AGREEMENT WAS TERMINATED

71.     The above paragraphs are incorporated by reference as if fully restated herein.

72.     Trans Ova's breaches identified in the above paragraphs, including, without

limitation, Trans Ova's offer for sale and sale of Straws outside of the licensed field of use,

comprised material and incurable breaches giving XY the right to immediately terminate the

Agreement upon written notice pursuant to the Agreement.

16

204073305 v6

73.     XY's November 20, 2007 Notice of Termination identifying certain Trans Ova breaches and giving notice of termination satisfied the written notice requirement of the termination provision of the Agreement.

74.     The Agreement, therefore, was duly terminated on November 20, 2007.

75.     Despite termination of the Agreement, Trans Ova has continued to practice the licensed technology and continued to make, use, offer for sale, or sell the licensed products without leave or license from XY.

76.     As a result of Trans Ova's actions, XY has sustained and, unless Trans Ova is enjoined, will continue to sustain, harm, including, without limitation, loss of profits, harm caused by the uncertainty over the existence of continuing rights and obligations under the Agreement, and harm to its valuable goodwill and reputation established in connection with its past licensing practices, causing further loss of profits, damage to XY's negotiating position for subsequent licenses, and other harm for which there is no adequate remedy at law.  Moreover, Trans Ova has been unjustly enriched through its decision to disregard or dispute the effect of the Notice of Termination.

77.     Accordingly, the Court should enter a judgment that the Agreement was duly terminated on November 20, 2007.

## COUNT XIII, PLEAD IN THE ALTERNATIVE — DECLARATORY JUDGMENT THAT THE AGREEMENT EXPIRED

78.     The above paragraphs are incorporated by reference as if fully restated herein.

79.     In the alternative, if the Court determines that XY's Notice of Termination did not terminate the Agreement, the Agreement expired according to its terms.

80.     The Agreement had a five year term and, therefore, would have expired on April 16, 2009, had it not been terminated earlier.  *See* Agreement, 2.3.  Although the Agreement

17

includes an automatic renewal provision, such renewal is conditioned on Trans Ova not being in material breach of any term or provision of the Agreement. *See* Agreement, 2.4.

81.     If the Agreement had not been terminated, Trans Ova would have been in material breach of numerous terms or provisions of the Agreement on the date of the expiration of the Agreement term.  Material Trans Ova breaches include, but are not limited to, the following:

a) Trans Ova breached and continues to breach the provisions of the Agreement limiting the particular customers to whom Trans Ova is permitted to sell to;

b) Trans Ova breached and continues to breach the provisions of the Agreement limiting the maximum number of Straws Trans Ova is permitted to sell each year;

c) Trans Ova breached and continues to breach the provisions of the Agreement limiting Trans Ova's ability to grant sublicenses;

d) Trans Ova breached and continues to breach the Agreement by failing to report and tender payment for all royalties it is obligated to pay under the Agreement.;

e) Trans Ova breached and continues to breach the Agreement by failing to obtain approval for collateral materials from XY;

f) Trans Ova breached and continues to breach the Agreement by using non-approved instruments for its sorting services; and

g) Trans Ova breached and continues to breach the Agreement by violating the implied duty of good faith and fair dealing under Colorado law, such violations including, without limitation, the manipulation of Straw cell concentration and methods of delivery of licensed products to circumvent the limits of the license grant and avoid paying royalties in full, the sale of Straws to known resellers, the

18

use of fluids and parts for unauthorized purposes, the additional acts described in (a) through (f) above, and various other violations.

82.     Because Trans Ova was in material breach of at least the foregoing terms or provisions when the term of the Agreement ended on April 16, 2009, the Agreement did not automatically renew under its terms, and the Agreement has expired.  Moreover, although not required for non-renewal under the Agreement, Trans Ova was put on notice in XY's Notice of Termination of at least breaches (a) through (c) in the foregoing paragraph.

83.     Despite the expiration of the Agreement, Trans Ova has continued to practice the licensed technology and continued to make, use, offer for sale, or sell the licensed products without leave or license from XY.

84.     As a result of Trans Ova's actions, XY has sustained and, unless Trans Ova is enjoined, XY will continue to sustain, harm, including, without limitation, loss of profits, harm caused by the uncertainty over the existence of continuing rights and obligations under the Agreements, and harm to its valuable goodwill and reputation established in connection with its past licensing practices, causing further loss of profits, damage to XY's negotiating position for entering subsequent licenses, and other harm for which there is no adequate remedy at law. Moreover, Trans Ova has been unjustly enriched through its decision to disregard expiration of the License.

85.     Accordingly, as an alternative remedy, the Court should enter a judgment that the Agreement expired by its terms on April 16, 2009.

## COUNT XIV — BREACH OF CONTRACT

86.     The above paragraphs are incorporated by reference as if fully restated herein.

87.     For any periods in which the Agreement is determined to have been in effect, Trans Ova committed numerous material breaches.  Trans Ova breaches within the applicable

19

limitations period include, but are not limited to, those breaches identified in paragraph 76 (a) through (g) above.

88.   XY fully performed its obligations under the Agreement, and satisfied any and all conditions precedent necessary to trigger Trans Ova's obligations under the Agreement.

89.   As a result of Trans Ova's numerous breaches of the Agreement, XY has been damaged and XY is entitled to damages, an accounting of profits, and all other legally permissible forms of monetary recovery.

## COUNT XV — UNJUST ENRICHMENT AND CONSTRUCTIVE TRUST

90.   The above paragraphs are incorporated by reference as if fully restated herein.

91.   Since XY sent the Notice of Termination on November 20, 2007, Trans Ova has continued to tender royalty payments to XY, and XY has continued to decline all such tenders of royalty payments in light of the termination of the Agreement.

92.   XY has declined all such tenders of royalty payments in order to avoid any allegation or inference that its acceptance of any such payment would constitute waiver of its assertion of material and incurable breaches of the Agreement, even though any such finding or inference of waiver would not be factually or legally justified.

93.   Despite XY's declination of such tenders of royalty payments, Trans Ova has continued to practice XY's patented inventions and has therefore infringed and continues to infringe the Asserted Patents, and thereby has derived significant benefits from the use of XY's intellectual property.

94.   On information and belief, the sum of such tenders of payment is at least $1.3M, exclusive of interest.

20

95.     Trans Ova has received a benefit at the expense of XY under circumstances that would make it unfair, unjust, and inequitable for Trans Ova to retain the tendered royalty payments, and therefore Trans Ova has been unjustly enriched by retaining said funds.

96.     In these circumstances, XY is entitled to an accounting of said funds and the imposition of a constructive trust on said funds, against Trans Ova as the constructive trustee and in favor of XY as the beneficiary.

**PRAYER FOR RELIEF**

WHEREFORE, XY prays for judgment and seeks relief against Defendant as follows:

(a)     For Judgment that Defendant has infringed the '425 Patent;

(b)     For Judgment that Defendant has infringed the '307 Patent;

(c)     For Judgment that Defendant has infringed the '435 Patent;

(d)     For Judgment that Defendant has infringed the '768 Patent;

(e)     For Judgment that Defendant has infringed the '745 Patent;

(f)     For Judgment that Defendant has infringed the '687 Patent;

(g)     For Judgment that Defendant has infringed the '921 Patent;

(h)     For Judgment that Defendant has infringed the '867 Patent;

(i)     For Judgment that Defendant has infringed the '860 Patent;

(j)     For Judgment that Defendant has infringed the '920 Patent;

(k)     For Judgment that Defendant has infringed the '053 Patent;

(l)     For Judgment that Defendant's infringement of any or all of the Asserted Patents is and has been willful;

204073305 v6

(m)    For an accounting of all damages sustained by XY as the result of the acts of infringement by Defendant, but not less than a reasonable royalty under 35 U.S.C. § 284;

(n)    For actual damages together with prejudgment interest;

(o)    For enhanced damages pursuant to 35 U.S.C. § 284;

(p)    For a preliminary and final injunction against Defendant's continuing infringement;

(q)    For Judgment that the Agreement was duly terminated on November 20, 2007, or, in the alternative, that the Agreement expired on April 16, 2009;

(r)    For an Order enforcing XY's first right of refusal and right to match any other bona fide offer to purchase Trans Ova's flow cytometry equipment upon termination or expiration of the Agreement;

(s)    For Judgment that Trans Ova has breached the Agreement;

(t)    For compensatory damages for breach of the Agreement in an amount to be proved at trial;

(u)    For an accounting and disgorgement of Trans Ova's profits and other sums unlawfully obtained;

(v)    For an accounting of all royalty payments tendered by Trans Ova but declined by XY and the imposition of a constructive trust on such funds, against Trans Ova as the constructive trustee and in favor of XY as the beneficiary;

(w)    In the event that the Agreement is determined to have been in effect any time after November 20, 2007, for an accounting and payment of any royalties owed under

22

204073305 v6

the Agreement that were either not paid by Trans Ova or declined or unrealized by XY;

(x)    In the event that the Agreement is determined to still be in effect, for an Order terminating the Agreement;

(y)    For an award of attorneys' fees and costs pursuant to 35 U.S.C. § 285, Section 6.4 of the Agreement, or as otherwise permitted by law; and

(z)    For such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a jury trial.

204073305 v6

Respectfully submitted,

Dated November 21, 2013                    **AKIN GUMP STRAUSS HAUER & FELD LLP**


                                           */s/ Kirt S. O'Neill*
                                           KIRT S. O'NEILL
                                           State Bar No. 00788147
                                           koneill@akingump.com
                                           DANIEL L. MOFFETT
                                           State Bar No. 24051068
                                           dmoffett@akingump.com
                                           GEORGE A. L. ROSBROOK
                                           State Bar No. 24070141
                                           arosbrook@akingump.com
                                           300 Convent Street, Suite 1600
                                           San Antonio, Texas 78205-3732
                                           Telephone: (210) 281-7000
                                           Fax: (210) 224-2035

                                           **SWEETBAUM SANDS ANDERSON PC**
                                           JON F. SANDS
                                           jsands@sweetbaumsands.com
                                           MELISSA C. COLLINS
                                           mcollins@sweetbaumsands.com
                                           1125 Seventeenth Street, Suite 2100
                                           Denver, Colorado 80202
                                           Phone: (303) 296-3377
                                           Fax: (303) 296-7343

                                           **ATTORNEYS FOR PLAINTIFF
                                           XY, LLC**

204073305 v7

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically with the

Clerk of Court using the CM/ECF system. As such, this document was served on all counsel

who are deemed to have consented to electronic service. All other counsel of record not deemed

to have consented to electronic service were served with a true and correct copy of the foregoing

by email and/or fax, on this the 21st of November, 2013.

*/s/ George A. L. Rosbrook*
GEORGE A. L. ROSBROOK

**EXHIBIT 3**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-00876-WJM-BNB

XY, LLC

        Plaintiff/Counterclaim Defendant,

v.

TRANS OVA GENETICS, L.C.

        Defendant/Counterclaim Plaintiff,

v.

INGURAN, LLC

        Counterclaim Defendant.

---

## DEFENDANT'S AMENDED ANSWER TO SECOND AMENDED COMPLAINT, COUNTERCLAIMS AND JURY DEMAND

---

COMES NOW, Trans Ova Genetics, L.C., ("Trans Ova"), through its counsel Lathrop & Gage LLP and submits its Amended Answer to Plaintiff's Second Amended Complaint, Counterclaims and Jury Demand in response to plaintiff XY, LLC's ("XY") Second Amended Complaint (herein, the "Complaint"), as follows.

## I.  ANSWER

### THE PARTIES

1.      On information and belief, Plaintiff's office and place of business is at 22575 SH 6 South, Navasota, Texas 77868, and so paragraph 1 of the Complaint is denied.

2.     Defendant admits the allegations set forth in Paragraph 3 of the Complaint.

## NATURE OF THE ACTION

3.     Defendant admits that this purports to be, in part, a civil action for the infringement of United States Patent No. 7,820,425; United States Patent No. 6,357,307; United States Patent No. 6,604,435; United States Patent No. 6,782,768; United States Patent No. 6,263,745; United States Patent No. 7,713,687; United States Patent No. 7,771,921; United States Patent No. 6,149,867; United States Patent No. 6,524,860; United States Patent No. 7,195,920; and United States Patent No. 8,569.053 under the patent laws of the United States, 35 U.S.C. §271 *et seq.* (collectively "Asserted Patents").

4.     Defendant admits that this is, in part, an action seeking a declaratory judgment that the Commercial License Agreement dated April 16, 2004 as modified by an Addendum dated May 17, 2005 and Letter Agreement dated March 9, 2005 (collectively, the "Agreement") was terminated and that the basis of such alleged termination consisted of certain alleged breaches referenced in a letter from Plaintiff to Defendant dated November 20, 2007. Defendant denies that it was in breach of the Agreement and that such purported termination was effective and denies that Plaintiff is entitled to the relief referenced in paragraph 4 of the Complaint.

5.     Defendants admit that Plaintiff is seeking certain damages "under state and common law" for alleged breach of contract, but denies that Plaintiff is entitled to the relief referenced in paragraph 5 of the Complaint.

## JURISDICTION

6.     In response to paragraph 6 of the Complaint, Defendant admits that this United States District Court for the district of Colorado has subject matter jurisdiction pursuant to 28

21584455v1

U.S. C. §1331 and §1338(a) because the claims herein arise in part under the patent laws of the United States, including 35 U.S.C. § 271, and that the Court has jurisdiction over the declaratory relief requested herein pursuant to U.S.C. §2201 and §2202 because an actual controversy exists between the parties concerning whether the Agreement was terminated. Defendant further submits to the personal jurisdiction of the United States District Court for Colorado and has established minimum contacts with this jurisdiction that make personal jurisdiction proper. The allegations in paragraph 6 of the Complaint that are not fully consistent with the admissions herein are denied.

## VENUE

7.      As to paragraph 7 of the Complaint, Defendant admits that it has committed acts within Colorado and this judicial district and that it does business in this District, and that venue in the United States District Court for Colorado is proper.

## FACTUAL BACKGROUND

8.      As to paragraph 8 of the Complaint, Defendant admits that flow cytometry is used to separate sperm cells that carry an X chromosome from those carrying a Y chromosome and that once separated in this fashion, sperm cells can be used for sex selection to produce offspring of a desired gender in the manner generally described in paragraph 8. Defendant also admits that XY owns patents in the field of flow cytometry-based sex selection, including patents on certain methods, techniques and devices pertaining to sex selection of bovine sperm cells. Except expressly admitted herein, paragraph 8 is denied.

9.      Regarding paragraph 9 of the Complaint, Defendant admits that it provides animal husbandry and reproductive services to cattle breeders and that it provides sex-selected

3

husbandry and reproductive services. Defendant admits that it has provided sex-selected reproductive services to cattle breeders since entering into the Agreement and using some, but not all of the technology described in Plaintiff's patents. Except expressly admitted herein, paragraph 9 is denied.

10.     In response to paragraph 10 of the Complaint, Defendant admits that it entered into the Agreement and states that the Agreement speaks for itself.

11.     Defendant denies the allegations set forth in Paragraph 11 of the Complaint.

12.     Defendant admits that Plaintiff sent a letter on November 20, 2007 purporting to terminate the Agreement. Defendant denies paragraph 12 of the Complaint except admitted herein.

13.     Defendant admits that Plaintiff has been aware since December 12, 2007 that Defendant disagrees that it was in breach of the Agreement and that Defendant has consistently abided by the Agreement by making royalty payments to Plaintiff as the Agreement requires. Defendant admits that Plaintiff has not accepted all but one of the proffered royalty payments, and denies the allegations in paragraph 13 of the Complaint except admitted herein.

14.     Regarding paragraph 14 of the Complaint, Defendant admits that the parties have engaged in discussion regarding potentially resolving the present dispute but have been unable to reach a negotiated solution. Defendant denies that Plaintiff has engaged in these negotiations in good faith and denies all remaining allegations in paragraph 14 of the Complaint not expressly admitted herein.

15.     Defendant admits that it has continued to utilize sex-selection technologies since the inception of the Agreement for animal husbandry and bovine reproductive services.

Defendant denies the allegations in paragraph 15 of the Complaint except expressly admitted herein.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 7,820,425

16.     Defendant incorporates the above paragraphs as though fully restated herein.

17.     Defendant admits that on October 26, 2010, United States Patent No. 7,820,425 ("'425 Patent") issued and was entitled "Method of Cryopreserving Selected Sperm Cells" and that a true and correct copy of the '425 Patent is attached to the Complaint as Exhibit C. Defendant lacks sufficient knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 117 of the Complaint and therefore denies the same.

18.     Defendant denies the allegations set forth in Paragraph 18 of the Complaint.

19.     Defendant denies the allegations set forth in Paragraph 19 of the Complaint.

20.     Defendant denies the allegations set forth in Paragraph 20 of the Complaint.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 6,357,307

21.     Defendant incorporates the above paragraphs as though fully restated herein.

22.     Defendant admits that, on March 19, 2002, United States Patent No. 6,357,307 ("'307 Patent") issued and was entitle "System and Method of Flow Cytometry and Sample Handling" and that a true and correct copy of '307 Patent is attached to the Complaint as Exhibit D. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 22 of the Complaint and therefore denies the same.

23.     Defendant denies the allegations set forth in Paragraph 23 of the Complaint.

24.     Defendant denies the allegations set forth in Paragraph 24 of the Complaint.

25.     Defendant denies the allegations set forth in Paragraph 25 of the Complaint.

**COUNT III – INFRINGEMENT OF U.S. PATENT NO. 6,604,435**

26.     Defendant incorporates by reference the above paragraphs as though fully restated herein.

27.     Defendant admits that, on August 12, 2003, United States Patent No. 6,604,435 ("'435 Patent") issued and was entitled "Low Acceleration Method of Flow Cytometry" and that a true and correct copy of the '435 Patent is attached to the Complaint as Exhibit E. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 27 of the Complaint and therefore denies the same.

28.     Defendant denies the allegations set forth in Paragraph 28 of the Complaint.

29.     Defendant denies the allegations set forth in Paragraph 29 of the Complaint.

30.     Defendant denies the allegations set forth in Paragraph 30 of the Complaint.

**COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 6,782,768**

31.     Defendant incorporates by reference the above paragraphs as though fully restated herein.

32.     Defendant admits that, on August 31, 2004, United States Patent No. 6,782,768 ("'768 Patent") issued and was entitled "Flow Cytometry Nozzle" and that a true and correct copy of the '768 Patent is attached to the Complaint as Exhibit F. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 32 of the Complaint and therefore denies the same.

33.     Defendant denies the allegations set forth in Paragraph 33 of the Complaint.

34.     Defendant denies the allegations set forth in Paragraph 34 of the Complaint.

21584455v1

35.     Defendant denies the allegations set forth in Paragraph 35 of the Complaint.

**COUNT V – INFRINGEMENT OF U.S. PATENT NO. 6,263,745**

36.     Defendant incorporates by reference the above paragraphs as though fully restated herein.

37.     Defendant admits that, on July 24, 2001, United States Patent No. 6,263,745 ("'745 Patent") issued and was entitled "Flow Cytometry Nozzle and Flow Cytometer Sample Handling Methods" and that a true and correct copy of the '745 Patent is attached to the Complaint as Exhibit G.  Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 37 of the Complaint and therefore denies the same.

38.     Defendant denies the allegations set forth in Paragraph 38 of the Complaint.

39.     Defendant denies the allegations set forth in Paragraph 39 of the Complaint.

40.     Defendant denies the allegations set forth in Paragraph 40 of the Complaint.

**COUNT VI – INFRINGEMENT OF U.S. PATENT NO. 7,713,687**

41.     Defendant incorporates by reference the above paragraphs as though fully restated herein.

42.     Defendant admits that, on May 11, 2010, United States Patent No. 7,713,687 ("'687 Patent") issued and was entitled "System to Separate Frozen-Thawed Spermatozoa into X-Chromosome Bearing and Y-Chromosome Bearing Populations" and that a true and correct copy of the '687 Patent is attached to the Complaint as Exhibit H.  Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 42 of the Complaint and therefore denies the same.

7

43.     Defendant denies the allegations set forth in Paragraph 43 of the Complaint.

44.     Defendant denies the allegations set forth in Paragraph 44 of the Complaint.

45.     Defendant denies the allegations set forth in Paragraph 45 of the Complaint.

## COUNT VII – INFRINGEMENT OF U.S. PATENT NO. 7,771,921

46.     Defendant incorporates by reference the above paragraphs as though fully restated herein.

47.     Defendant admits that, on August 10, 2010, United States Patent No. 7,771,921 ("'921 Patent") issued and was entitled "Separation Systems of Frozen-Thawed Spermatozoa into X-Chromosome Bearing and Y-Chromosome Bearing Populations" and that a true and correct copy of the '921 Patent is attached to the Complaint as Exhibit I.  Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 42 of the Complaint and therefore denies the same.

48.     Defendant denies the allegations set forth in Paragraph 48 of the Complaint.

49.     Defendant denies the allegations set forth in Paragraph 49 of the Complaint.

50.     Defendant denies the allegations set forth in Paragraph 50 of the Complaint.

## COUNT VIII – INFRINGEMENT OF U.S. PATENT NO. 6,149,867

51.     Defendant incorporates by reference the above paragraphs as though fully restated herein.

52.     Defendant admits that, on November 21, 2000, United States Patent No. 6,149,867 ("'867 Patent") issued and was entitled "Sheath Fluids and Collection Systems for Sex-Specific Cytometer Sorting of Sperm" and that  a true and correct copy of the '867 Patent is attached to the Complaint as Exhibit J.  Defendant lacks knowledge or information sufficient to

21584455v1

form a belief about the truth of the remaining allegations set forth in Paragraph 52 of the

Complaint and therefore denies the same.

53.    Defendant denies the allegations set forth in Paragraph 53 of the Complaint.

54.    Defendant denies the allegations set forth in Paragraph 54 of the Complaint.

55.    Defendant denies the allegations set forth in Paragraph 55 of the Complaint.

## COUNT IX – INFRINGEMENT OF U.S. PATENT NO. 6,524,860

56.    Defendant incorporates by reference the above paragraphs as though fully restated

herein.

57.    Defendant admits that, on February 24, 2003, United States Patent No. 6,524,860

("'860 Patent") issued and was entitled "Methods for Improving Sheath Fluids and Collection

Systems for Sex-Specific Cytometer Sorting of Sperm" and that a true and correct copy of the

'867 Patent is attached to the Complaint as Exhibit K.   Defendant lacks knowledge or

information sufficient to form a belief about the truth of the remaining allegations set forth in

Paragraph 57 of the Complaint and therefore denies the same.

58.    Defendant denies the allegations set forth in Paragraph 58 of the Complaint.

59.    Defendant denies the allegations set forth in Paragraph 59 of the Complaint.

60.    Defendant denies the allegations set forth in Paragraph 60 of the Complaint.

## COUNT X – INFRINGEMENT OF U.S. PATENT NO. 7,195,920

61.    Defendant incorporates by reference the above paragraphs as though fully restated

herein.

62.    Defendant admits that, on March 27, 2007, United States Patent No. 7,195,920

("'920 Patent") issued and was entitled "Collection Systems for Cytometer Sorting of Sperm"

9

and that a true and correct copy of the '920 Patent is attached to the Complaint as Exhibit L. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 62 of the Complaint and therefore denies the same.

63.     Defendant denies the allegations set forth in Paragraph 63 of the Complaint.

64.     Defendant denies the allegations set forth in Paragraph 64 of the Complaint.

65.     Defendant denies the allegations set forth in Paragraph 65 of the Complaint.

### COUNT XI – INFRINGEMENT OF U.S. PATENT NO. 8,569,053

66.     Defendant incorporates by reference the above paragraphs as though fully restated herein.

67.     Defendant admits that on October 29, 2013, United States Patent No. 8,569,053 ("'053 Patent") issued and was entitled "In-Vitro Fertilization Systems with Spermatozoa Separated into x. Chromosome and y. Chromosome Bearing Populations" and that a true and correct copy of the '053 Patent is attached to the Complaint as Exhibit M. Defendant lacks knowledge or information sufficient to form a belief about the remaining allegations set forth in Paragraph 67 of the Complaint and therefore denies the same.

### COUNT XII – DECLARATORY JUDGMENT THAT THE
### AGREEMENT WAS TERMINATED

68.     Defendant incorporates by reference the above paragraphs as though fully restated herein.

69.     Defendant denies the allegations set forth in paragraph 72 of the Compliant.

70.     Defendant denies the allegations set forth in paragraph 73 of the Complaint.

71.     Defendant denies the allegation in paragraph 74 of the Complaint.

10

72.     Defendant admits that it has continued to sell sex-selected animal husbandry and bovine reproductive products and services, but denies the remainder of paragraph 75 not expressly admitted herein.

73.     Defendant denies the allegations in paragraph 76 of the Complaint.

74.     Defendant denies that Plaintiff is entitled to the relief requested in paragraph 77 of the Complaint.

## COUNT XIII, PLEAD IN THE ALTERNATIVE – DECLARATORY JUDGMENT THAT THE AGREEMENT EXPIRED

75.     Defendant incorporates by reference the above paragraphs as though fully restated herein.

76.     Defendant denies the allegation in paragraph 79 of the Complaint.

77.     Defendant denies that it was in material breach of any term of the Agreement, and therefore denies that the Agreement's automatic renewal provision was null and void.

78.     Defendant denies the allegations in paragraph 81 of the Complaint, and all its sub-parts.

79.     Defendant denies paragraph 82 of the Complaint.

80.     Defendant admits that it has continued to sell sex-selected animal husbandry and bovine reproductive products and services, but denies the remainder of paragraph 83 not expressly admitted herein.

81.     Defendant denies the allegations in paragraph 84 of the Complaint, and denies that Plaintiff is entitled to the injunctive relief requested therein.

82.     Defendant denies that Plaintiff is entitled to the relief requested in paragraph 85 of the Complaint.

11

## COUNT XIV – BREACH OF CONTRACT

83.     Defendant incorporates by reference the above paragraphs as though fully restated herein.

84.     Defendant denies the allegations in paragraph 87 of the Complaint.

85.     Defendant denies the allegations in paragraph 88 of the Complaint.

86.     Defendant denies that Plaintiff is entitled to the relief requested in paragraph 89 of the Complaint.

## COUNT XV – UNJUST ENRICHMENT AND CONSTRUCTIVE TRUST

87.     Defendant incorporates by reference the above paragraphs as though fully restated herein.

88.     Defendant admits that it has continued to meet its obligations under the License by tendering royalty checks as required since November 20, 2007, and that XY has declined to cash any but one of the royalty checks.   Except as admitted herein, Defendant denies the allegations in paragraph 91 of the Complaint.

89.     Defendant denies the allegations in paragraph 92 of the Complaint.

90.     Defendant admits that it has provided sex-selected reproductive services to cattle breeders since entering into the Agreement and using some, but not all, of the technology described in Plaintiff's patents. Defendant further admits that it has derived benefit from utilizing certain of XY's sex-selection technologies as contemplated by the License that Defendant entered into with XY. Except as expressly admitted herein, the allegations in paragraph 93 are denied.

12

91.     Defendant admits that it has properly tendered royalty checks as required by the License and that the amount of the royalty checks exceeds $1 Million. Defendant further states that XY has not cashed the royalty checks at its own election. Defendant denies the allegations in paragraph 94 except as expressly admitted and stated herein.

92.     Defendant denies the allegations in paragraph 95 of the Complaint.

93.     Defendant denies that XY is entitled to the relief demanded in paragraph 96.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

Count XV of XY's Complaint fails to state a claim upon which relief may be granted.

### SECOND DEFENSE

XY's Complaint is barred by the doctrines of laches, acquiescence, waiver and/or estoppel.

### THIRD DEFENSE

XY's claims for damages are barred, in whole or in part, pursuant to 35 USC § 287.

### FOURTH DEFENSE

The '425 Patent is invalid pursuant to 35 U.S.C. § 102, 103 and/or 112.

### FIFTH DEFENSE

The '307 Patent is invalid pursuant to 35 U.S.C. § 102, 103 and/or 112.

### SIXTH DEFENSE

The '435 Patent is invalid pursuant to 35 U.S.C. § 102, 103 and/or 112.

### SEVENTH DEFENSE

The '768 Patent is invalid pursuant to 35 U.S.C. § 102, 103 and/or 112.

21584455v1

### EIGHTH DEFENSE

The '745 Patent is invalid pursuant to 35 U.S.C. § 102, 103 and/or 112.

### NINTH DEFENSE

The '687 Patent is invalid pursuant to 35 U.S.C. § 102, 103 and/or 112.

### TENTH DEFENSE

The '921 Patent is invalid pursuant to 35 U.S.C. § 102, 103 and/or 112.

### ELEVENTH DEFENSE

The '867 Patent is invalid pursuant to 35 U.S.C. § 102, 103 and/or 112.

### TWELFTH DEFENSE

The '860 Patent is invalid pursuant to 35 U.S.C. § 102, 103 and/or 112.

### THIRTEENTH DEFENSE

The '920 Patent is invalid pursuant to 35 U.S.C. § 102, 103 and/or 112.

### FOURTEENTH DEFENSE

The '053 Patent is invalid pursuant to 35 U.S.C. §§ 102, 103 and/or 112.

### FIFTEENTH DEFENSE

Trans Ova is not now nor has it infringed a valid claim of any of the patents-in-suit, either literally or under the doctrine of equivalents, directly or through inducement or contributory infringement.

### SIXTEENTH DEFENSE

As set forth in the counterclaims below, the '425 Patent is unenforceable under the doctrine of inequitable conduct.

14

### SEVENTEENTH DEFENSE

As set forth in the counterclaims below, the '687 Patent is unenforceable under the doctrine of inequitable conduct.

### EIGHTEENTH DEFENSE

As set forth in the counterclaims below, the '921 Patent is unenforceable under the doctrine of inequitable conduct.

### NINETEENTH DEFENSE

As set forth in the counterclaims below, the '860 Patent is unenforceable under the doctrine of inequitable conduct.

### TWENTIETH DEFENSE

As set forth in the counterclaims below, the '920 Patent is unenforceable under the doctrine of inequitable conduct.

### TWENTY-FIRST DEFENSE

As set forth in the counterclaims below, the '053 Patent is unenforceable under the doctrine of inequitable conduct.

### TWENTY-SECOND DEFENSE

Trans Ova has not and cannot infringe any of the patents-in-suit because it has a valid license agreement with XY that has not been terminated.

### TWENTY-THIRD DEFENSE

Trans Ova has not willfully infringed any of the patents-in-suit. Trans Ova was not provided notice of infringement prior to service of the complaint.

21584455v1

## TWENTY-FOURTH DEFENSE

XY's claims are barred in whole or in part by the doctrine of unclean hands.

## TWENTY-FIFTH DEFENSE

Trans Ova provides notice that it intends to rely upon any additional defenses that may become available or apparent during discovery, and reserves its right to amend this pleading and to assert such additional defenses or, if applicable, withdraw any of the above-delineated defenses as discovery proceeds.

## TWENTY-SIXTH DEFENSE

XY's patent misuse renders the patents unenforceable.

## TWENTY-SEVENTH DEFENSE

XY's claims should be dismissed for XY's failure to file the same within the statute of limitations for breach of contract actions, C.R.S. § 13-80-101.

## TWENTY-EIGHTH DEFENSE

Trans Ova is not now and has not been for the duration of the License in breach of the License's provisions.

## TWENTY-NINTH DEFENSE

In the event Trans Ova is found to have been in breach of any provision of the License, no such breach was material.

## THIRTIETH DEFENSE

Any alleged sub-licensing constituted downstream sales and may not constitute the basis for a claim of breach of contract under the License.

## II.   COUNTERCLAIMS

Defendant and Counterclaim Plaintiff, Trans Ova, asserts the following Counterclaims against Plaintiff and Counterclaim Defendant, XY, LLC and Counterclaim Defendant Inguran, LLC as follows:

### THE PARTIES

1.    Defendant and Counterclaim Plaintiff, Trans Ova, is a corporation duly organized under the laws of Iowa with its principal place of business at 2938 380th Street, Sioux Center, Iowa 51250. Trans Ova is in the business of commercializing the sorting of bovine semen based upon whether the semen contains XX or XY chromosomes.

2.    Upon information and belief, Counterclaim Defendant, XY, LLC ("XY"), is a corporation duly organized under the laws of Colorado, with its principal place of business at 1108 North Lemay Avenue, Fort Collins, Colorado 80524. XY has been and is in the business of filing for, obtaining and collecting patents in the field of sorting non-human, mammalian semen based upon whether the semen contains XX or XY chromosomes and licensing those patents to the industry. XY is now a wholly owned subsidiary of Counterclaim Defendant Inguran, LLC ("Inguran"), a Texas limited liability company with its principal place of business at 22575 Highway 6 South, Navasota, Texas 77868. Inguran purchased all of XY's stock in May 2007 and now controls XY. Inguran, which does business as Sexing Technologies, is in the business of commercializing the sorting of non-human, mammalian semen based upon whether the semen contains XX or XY chromosomes and has held a patent license from XY since 2003. Inguran has controlled the actions of XY and has been the driving force behind XY since the purchase in May 2007. XY now has the same management team as Inguran and has overlapping directors

17

with Inguran. The management team of XY does not act independently of the interests of Inguran. Inguran is the alter-ego of XY. XY and Inguran have operated as one entity since May 2007.

## RELEVANT MARKET AND MARKET POWER

3. XY, itself, and, since May 2007, under the direction and control of Inguran, has dominated the market in the United States for technology related to the sorting of non-human, mammalian semen by sex ("the technology market"). This technology encompasses, among many other things, the use of flow cytometry to sort sperm cells. XY has done so by, among other things, engaging in acts of patent misuse, inequitable conduct before the Patent Office, and other anticompetitive conduct associated with its licensing program. XY possesses well in excess of 90% of the technology market, if not 100% of the technology market. There is no other commercially viable technology which can be used to sort non-human, mammalian sperm cells by sex other than XY's technology. The technology consists of patents and other technology pertaining to flow cytometry and various methods associated with the sorting of sperm cells.

4. Inguran, through its control of XY since May 2007, has dominated the market in the United States for the sorting of bovine semen by sex and the production of straws of sex-sorted, bovine semen ("sorting market"). The sorting market in the United States can be viewed as a service market as well as a product market consisting of the initial sale of straws containing sex-sorted bovine semen by owners of technology or licensees of the technology, for the sorting of non-human, mammalian semen by sex. Inguran has done so by, among other things, engaging in acts of patent misuse, inequitable conduct before the Patent Office and other anticompetitive

conduct associated with XY's licensing program, a program which Inguran has controlled since May 2007. Inguran possesses well in excess of 90% of the sorting market. There is no other product which competes with sex-sorted bovine semen sorted with the use of XY's technology. The technology market and the sorting market will be collectively referred to as "the Relevant Markets."

### JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over Trans Ova's Counterclaims pursuant to 28 U.S.C. §§ 1331, 1337, 1338(a), 1367, and pursuant to Federal Rule of Civil Procedure 13.

6.     This Court has personal jurisdiction over XY as the plaintiff in this action.

7.     This Court has personal jurisdiction over Inguran as it resides in this district and has conducted business in this district.

8.     Exclusive venue of this action lies in the District of Colorado.

### ANTICOMPETITIVE CONDUCT

9.     Trans Ova has been in business as a premier provider of bovine embryo transfer since 1980 and in-vitro fertilization ("IVF") services since 1992. As sexed semen became more commercially viable, Trans Ova recognized that gender-selected semen produced by the method described in U.S. Patent No. 5,135,759 ("the Johnson Patent") would be advantageous to its customers, and sought to acquire sex sorted semen in artificial insemination straws ("Straws"). Trans Ova initially sought to obtain sorted semen from Inguran, a licensee of XY. When Inguran was unable to produce consistently Straws of sufficient quality, Trans Ova sought to obtain a license from XY and to purchase equipment to produce sex sorted bovine semen.

10.     During the second half of 2003 and the beginning of 2004, Trans Ova began negotiating a license agreement with XY concerning its patented technology relating to the sorting of bovine semen based upon whether the semen contained XX or XY chromosomes using a process known as flow cytometry.  Dr. Mervyn Jacobsen was the CEO of XY during this time period and handled the negotiations on behalf of XY.  In particular, Trans Ova was principally interested in licensing the Johnson Patent and possibly several others.  The Johnson Patent involved the use of flow cytometry to sort non-human, mammalian semen based upon whether the semen contained XX or XY chromosomes.

**A.     XY's Patent Misuse**

11.     The technology described within the Johnson Patent was developed by the United States Department of Agriculture ("USDA") and was initially licensed to XY under a USDA partnership program designed to augment research programs, expedite research results to the private sector, exchange information and knowledge, stimulate new business and economic development, enhance trade, preserve the environment, and improve the quality of life for all Americans.  From this license, XY applied for and received additional patents on sexing of non-human mammalian semen and related technologies, all within the field of flow cytometry and the preparation of semen for use in flow cytometers.

12.     The negotiations between XY and Trans Ova ultimately led to the execution of a license agreement entitled "Commercial License Agreement - United States of America" ("License Agreement").  The License Agreement was entered into on April 16, 2004.

13.     The License Agreement was drafted by XY with little input from Trans Ova and contains many provisions which are anticompetitive and constitute patent misuse.  The

20

21584455v1

anticompetitive provisions within the License Agreement were coerced. For example, despite Trans Ova's being primarily interested in licensing the Johnson Patent and possibly several others, XY insisted on Trans Ova's accepting a package license which included patents unrelated or only marginally related to Trans Ova's business. Moreover, the License Agreement did not provide for a reduction in royalty percentages when certain patents expired, including the principal patent – the Johnson Patent. The grant-back provision within the License Agreement also required Trans Ova to assign all right, title and interest in and to "Improvements" to XY. Finally, the License Agreement required Trans Ova to "purchase adequate numbers of MoFlo flow cytometers from DakoCyotomation, Inc. . . . or other supplier, authorized by [XY] to satisfy [Trans Ova's] obligations under this License Agreement", even though the MoFlo flow cytometers were not the subject of any of XY's patents. This provision benefitted XY because it had a business relationship with DakoCytomation. XY has existing license agreements with other entities which concern United States commerce and which have provisions similar to the ones contained within the License Agreement with Trans Ova discussed above. XY, alone, and, since the acquisition by Inguran, under the direction and control of Inguran, has continued to enforce these agreements containing provisions which constitute patent misuse.

14.     As a result of obtaining the license to the Johnson Patent from the USDA, and the patent misuse associated with its licensing program, XY and Inguran attempted to monopolize and monopolized the Relevant Markets. Indeed, XY's own website proclaims that it is the "master license[or] in charge of all sperm sorting in non-human mammals worldwide."

15.     The License Agreement was structured in several phases. It initially permitted Trans Ova to sell 5,000 Straws annually in Phase I, however, Trans Ova had the option to pay

21584455v1

more money and enter two other phases which would have enabled Trans Ova to sell Straws at higher annual volumes. For example, entering Phase II would have enabled Trans Ova to sell as many as 50,000 Straws per year while Phase III encompassed unlimited sales of Straws. Trans Ova entered into the License Agreement with the expectation that its business would expand and that it would enter Phases II and III quickly.

**B.      XY and Inguran's Wrongful Termination of the License Agreement**

16.     In 2006, Trans Ova began discussing with XY the prospect of exercising its option to enter Phases II and III of the License Agreement to increase the number of Straws it could produce and thus increase its share of the sorting market. Trans Ova engaged in these discussions with Dr. Jacobsen, XY's CEO at the time. Dr. Jacobsen supported Trans Ova's exercising its option to move into Phases II and III of the License Agreement. Indeed, Dr. Jacobsen and Trans Ova met in Japan in January 2007. During these meetings, Dr. Jacobsen, among other things, agreed orally that Trans Ova could sell up to 35,000 Straws under Phase I of the License Agreement and clarified that, under the existing License Agreement, Straws could be resold by Trans Ova's clients. Dr. Jacobson also agreed orally that Trans Ova could move into Phases II and III and that it could begin its efforts to obtain new customers. Trans Ova had satisfied all conditions precedent to entering Phases II and III of the License Agreement, and, in November 2006, XY agreed that all conditions had been met.

17.     With XY's full support and approval conveyed by Dr. Jacobsen, Trans Ova sought additional customers for its sexed-semen for AI and IVF services in late 2006 and 2007. Shortly after the discussions concerning Trans Ova's exercising the Phase II and Phase III options, and while Trans Ova was exploring the commercial feasibility of doing the same,

21584455v1

Inguran purchased XY in May 2007. As a result of this purchase, XY's management team was replaced by Inguran's management team, and Dr. Jacobsen was no longer employed by and in control of XY. Since the purchase of XY, Inguran has managed and controlled XY to the benefit of Inguran and with the intent to monopolize the Relevant Markets.

18.     After Inguran purchased XY, the negotiations with Trans Ova to exercise its option under Phase II and Phase III began again with XY's new management team from Inguran. In the summer of 2007, Trans Ova shared its business plan with XY and Inguran for making the Phase II and Phase III options commercially viable, including the new sales prospects for Straws it had developed as a result of Trans Ova's negotiations with Dr. Jacobsen. Shortly after Trans Ova disclosed its desire to exercise its Phase II and Phase III options and its business plan for making these Phases profitable for both companies, XY, now under the control of Inguran, determined that it would rather control the sorting market through Inguran's manufacturing business than allow Trans Ova to exercise its Phase II and Phase III options. XY, under the control of Inguran, then sent Trans Ova a letter on November 20, 2007 which purportedly terminated the License Agreement ("XY Letter").

19.     The XY Letter contained unfounded and unjustified reasons for XY's purported termination of the License Agreement and did not have the effect of terminating the License Agreement. The XY Letter was deceptive and had the effect of preventing Trans Ova from entering Phases II and III of the License Agreement and becoming a significant competitor. The XY Letter was intended to injure competition in the Relevant Markets by eliminating Trans Ova, XY's and Inguran's only potentially significant competitor in those markets. The purported

termination of the License Agreement also constitutes a breach of the License Agreement and a breach of XY's duty of good faith and fair dealing.

20.     After receiving the XY Letter purportedly terminating the License Agreement and demanding that Trans Ova cease operations under the License Agreement, Trans Ova informed XY in a letter dated December 12, 2007 that Trans Ova was not in breach of the License Agreement, material or otherwise.

21.     As a result of XY's change in position, denying Trans Ova's right to exercise its option to enter Phases II and III of the License Agreement, Trans Ova sold only a limited number of Straws in accordance with the level of sales set forth in Phase I of the License Agreement.

22.     Although XY alleges that it has at all times considered the License Agreement to have been terminated and to have no effect, XY continued to indicate to the public via its website the statement that Trans Ova was an approved licensee of XY's sexing technology.

23.     Trans Ova has attempted continuously to negotiate a resolution of the dispute over whether Trans Ova was in breach of the License Agreement since the XY Letter was written. Trans Ova has repeatedly attempted to exercise its rights under the License Agreement to buy into Phase II and Phase III of the License to allow Trans Ova to expand its business. XY, under the control of Inguran, has repeatedly denied that request.

24.     While Trans Ova has been attempting continuously to resolve the dispute over whether it was in breach of the License Agreement in 2007 and to exercise its Phase II and Phase III options, Trans Ova has continued to comply with the terms of the License Agreement. Trans Ova has regularly and accurately reported its sales of Straws to XY, has regularly sent royalty

checks to XY, and, as noted above, has kept within the limits of sales discussed in Phase I of the License Agreement.

### C.   XY's and Inguran's Acts of Inequitable Conduct in the Patent Office

25.   XY, both before Inguran's acquisition and after the acquisition, has engaged in inequitable conduct before the United States Patent and Trademark Office ("PTO"). Some of the acts of inequitable conduct were done by XY alone, others were done under the direction and control of Inguran. Indeed, Inguran's in-house counsel have been involved directly in prosecuting some of XY's patents.

26.   In connection with the prosecution of U.S. Patent No. 7,820,425 (the "'425 Patent"), XY intentionally buried material references in the prosecution history of the '425 Patent with the intent of deceiving the PTO and knowing that the Patent Office Examiner would not review these references in connection with the decision as to whether to allow the issuance of the patent. XY committed these acts under its own direction and, after the acquisition by Inguran, at the direction of Inguran. The prosecution history of the '425 Patent is a matter of public record and is incorporated herein by reference.

27.   During the prosecution of the '425 Patent, XY disclosed approximately 540 United States patents, 230 foreign patents, and 750 technical articles. Many of these disclosures had no materiality at all with respect to the technology at issue, and many were not even arguably prior art. XY knew full well that the Examiner would not have the time to review a vast majority of the disclosed references. In particular, XY buried some of the most material references including, but not limited to:

21584455v1

A.  John F. Hasler, *Symposium: Reproductive Technology and Genetic Improvement*, J. of Dairy Science, Vol. 75, No. 10, p. 2857-2879 (October 1992).

B.  Jan Stap et al., *Improving the Resolution of Cryopreserved X- and Y-Sperm During DNA Flow Cytometric Analysis with the Addition of Percoll to Quench the Fluorescence of Dead Sperm*, J. of Animal Science, Vol. 76, No. 7, p. 1896-1902 (July 1998).

C.  G.E. Seidel, Jr., *Commercializing Reproductive Biotechnology – The Approach Used By XY, Inc.*, Theriogenology, Vol. 51, No. 1, p. 5 (January 1999).

D.  D.G. Cran and L.A. Johnson, *The Predetermination of Embryonic Sex Using Flow Cytometrically Separated X and Y Spermatozoa*, Human Reproduction Update, Vol. 2, No. 4, p. 355-363 (1996)

E.  D.G. Cran et al., *Production of Bovine Calves Following Separation of X- and Y-Chromosome Bearing Sperm and In Vitro Fertilisation*, The Veterinary Record, Vol. 132, No. 2, p. 40-41 (January 1993).

F.  D.G. Cran et al., *Preselection in Cattle: A Field Trial,* The Veterinary Record, Vol. 136, No. 19, p. 495-496 (May 1995).

G.  Lawrence A. Johnson et al., *Sex Preselection in Rabbits: Live Births from X and Y Sperm Separated by DNA and Cell Sorting*, Biology of Reproduction, Vol. 41, No. 2, p. 199-203 (1989).

H.  U.S. Patent Number 4,474,875 to Shrimpton.

28.  Moreover, not only did XY disclose approximately 1,500 references, it did not highlight to the Examiner the references which were most significant as is suggested by the Manual of Patent Examining Procedure § 2004.13: "It is desirable to avoid the submission of long lists of documents if it can be avoided. Eliminate clearly irrelevant and marginally pertinent cumulative information. If a long list is submitted, highlight those documents which have been specifically brought to the applicant's attention and/or are known to be most significant."

21584455v1

29.     In connection with the prosecution of U.S. Patent No. 7,713,687 (the "'687 Patent"), XY intentionally buried material references in the prosecution history of the '687 Patent with the intent of deceiving the PTO and knowing that the Patent Office Examiner would not review these references in connection with the decision as to whether to allow the issuance of the patent.   XY committed these acts under its own direction and, after the acquisition by Inguran, at the direction of Inguran.   The prosecution history of the '687 Patent is a matter of public record and is incorporated herein by reference.

30.     During the prosecution of the '687 Patent, XY disclosed approximately 570 United States patents, 210 foreign patents, and 800 articles.   Many of these disclosures had no materiality at all with respect to the technology at issue, and many were not even arguably prior art. XY knew full well that the Examiner would not have the time to review a vast majority of the disclosed references.   In particular, XY buried some of the most material references including, but not limited to:

A.     U.S. Patent Number 5,135,759 to Johnson, et al.

B.     Hamano, K., et al., *Gender Preselection in Cattle with Intracytoplasmically Injected, Flow Cytometrially Sorted Sperm Heads*, Biology of Reproduction 60, 1999, pp. 1194-1197.

C.     Johnson, L.A., *Gender Preselection in Domestic Animals Using Flow Cytometrically Sorted Sperm*, J Anim. Sci. (Suppl I), 70:8-18 (1992).

D.     Garner, Duane L., et al., *Effect of Semen Dilution on Bovine Sperm Viability as Determined by Dual-DNA Staining and Flow Cytometry*, J. of Andrology, Vol. 18, No. 3, May/Jun. 1997.

31.     Moreover, not only did XY disclose approximately 1,600 references, it did not highlight to the Examiner the references which were most significant as is suggested by the Manual of Patent Examining Procedure § 2004.13: "It is desirable to avoid the submission of

21584455v1

long lists of documents if it can be avoided. Eliminate clearly irrelevant and marginally pertinent cumulative information. If a long list is submitted, highlight those documents which have been specifically brought to the applicant's attention and/or are known to be most significant."

32.    In connection with the prosecution of U.S. Patent No. 7,771,921 (the "'921 Patent"), XY intentionally buried material references in the prosecution history of the '921 Patent with the intent of deceiving the PTO and knowing that the Patent Office Examiner would not review these references in connection with the decision as to whether to allow the issuance of the patent. XY committed these acts under its own direction and, after the acquisition by Inguran, at the direction of Inguran. The prosecution history of the '921 Patent is a matter of public record and is incorporated herein by reference.

33.    During the prosecution of the '921 Patent, XY disclosed approximately 500 United States patents, 210 foreign patents, and 750 articles. Many of these disclosures had no materiality at all with respect to the technology at issue, and many were not even arguably prior art. XY knew full well that the Examiner would not have the time to review a vast majority of the disclosed references. In particular, XY buried some of the most material references including, but not limited to:

A.    U.S. Patent Number 5,135,759 to Johnson, et al.

B.    Hamano, K., et al., *Gender Preselection in Cattle with Intracytoplasmically Injected, Flow Cytometrially Sorted Sperm Heads*, Biology of Reproduction 60, 1999, pp. 1194-1197.

C.    Johnson, L.A., *Gender Preselection in Domestic Animals Using Flow Cytometrically Sorted Sperm*, J Anim. Sci. (Suppl I), 70:8-18 (1992).

D.    Garner, Duane L., et al., *Effect of Semen Dilution on Bovine Sperm Viability as Determined by Dual-DNA Staining and Flow Cytometry*, J. of Andrology, Vol. 18, No. 3, May/Jun. 1997.

28

34. Moreover, not only did XY disclose approximately 1,450 references, it did not highlight to the Examiner the references which were most significant as is suggested by the Manual of Patent Examining Procedure § 2004.13: "It is desirable to avoid the submission of long lists of documents if it can be avoided. Eliminate clearly irrelevant and marginally pertinent cumulative information. If a long list is submitted, highlight those documents which have been specifically brought to the applicant's attention and/or are known to be most significant."

35. In connection with the prosecution of U.S. Patent No. 6,524,860 (the "'860 Patent"), XY intentionally buried material references in the prosecution history of the '860 Patent with the intent of deceiving the PTO and knowing that the Patent Office Examiner would not review these references in connection with the decision as to whether to allow the issuance of the patent. XY committed these acts under its own direction and, after the acquisition by Inguran, at the direction of Inguran. The prosecution history of the '860 Patent is a matter of public record and is incorporated herein by reference.

36. During the prosecution of the '860 Patent, XY disclosed approximately 40 United States patents, 7 foreign patents, and 300 articles. Many of these disclosures had no materiality at all with respect to the technology at issue, and many were not even arguably prior art. XY knew full well that the Examiner would not have the time to review a vast majority of the disclosed references. In particular, XY buried some of the most material references including, but not limited to:

    A.    Garnet, D.L., *et. al, Quantification of the X- and Y- Chromosome-Bearing Spermatozoa of Domesticate Animals by Flow Cytometry,* Biology of Reproduction 28, 312-321 (1983).

21584455v1

B.  Johnson, L.A., *Gender Preselection in Domestic Animals Using Flow Cytometry Sorted Sperm.* J. Animal Science Suppl. 1.70:8-18.

37.  Moreover, not only did XY disclose approximately 350 references, it did not highlight to the Examiner the references which were most significant as is suggested by the Manual of Patent Examining Procedure § 2004.13: "It is desirable to avoid the submission of long lists of documents if it can be avoided. Eliminate clearly irrelevant and marginally pertinent cumulative information. If a long list is submitted, highlight those documents which have been specifically brought to the applicant's attention and/or are known to be most significant."

38.  In connection with the prosecution of the '053 Patent, XY intentionally buried material references in the prosecution history of the '053 Patent with the intent of deceiving the PTO and knowing that the Patent Office Examiner would not review these references in connection with the decision as to whether to allow the issuance of the patent. XY committed these acts under its own direction and, after the acquisition by Inguran, at the direction of Inguran. The prosecution history of the '053 Patent is a matter of public record and is incorporated herein by reference.

39.  During the prosecution of the '053 Patent, XY disclosed to the PTO two related applications. The related applications each disclosed over 700 references, including United States patents, foreign patents, and articles. Many of these disclosures had no materiality at all with respect to the technology at issue, and many were not even arguably prior art. XY knew full well that the Examiner would not have the time to review a vast majority of the references disclosed in the related applications. In particular, XY buried some of the most material references including, but not limited to:

30

A.   Cran, D. G. et al., "*Production of Bovine Calves Following Separation of X- and Y-Chromosome Bearing Sperm and In Vitro Fertilization.*" Vet. Rec. 132: 40-41. 1993; and

B.   Cran, D.G. et al., "*The Predetermination of Embryonic Sex Using Flow Cytometrically Separated X and Y Spermatoza,*" Human Production Update 1996, Vol. 2(4) p. 355-63.

40.   Moreover, not only did XY disclose much more than 700 references, it did not highlight the references which were most significant as is suggested by the Manual of Patent Examining Procedure § 2004.13: "It is desirable to avoid the submission of long lists of documents if it can be avoided.  If a long list is submitted, highlight those documents which have been specifically brought to the applicants' attention and/or are known to be most significant."

## ANTITRUST INJURY AND INJURY TO TRANS OVA

41.   Trans Ova has been injured directly in that XY and Inguran have attempted to and have denied Trans Ova access to the Relevant Markets through exclusionary practices.  As a result, Trans Ova has not been able to sell sorted, bovine sperm products and services at the volume levels which it would be selling absent XY's and Inguran's anti-competitive conduct. Consequently, Trans Ova has significantly reduced revenues and profits.  XY and Inguran have injured Trans Ova directly to monopolize and maintain their monopoly in the Relevant Markets.

42.   Through the acts set forth herein, XY and Inguran have also injured competition in that Trans Ova and other sperm sorting businesses have not been able to compete with Inguran in the sorting market.  As a result, prices for bovine sperm sorted by sex and prices for sperm sorting services have been higher than they should be.  Customers of sorted bovine sperm and sperm sorting services, such as dairy farmers, cattle ranchers, bull owners and cattle breeders are

21584455v1

paying higher prices. These higher prices are then passed on to the consuming public in the United States who pay higher prices for dairy and beef products.

### FIRST CLAIM FOR RELIEF
### Declaration of Non-Infringement of the '425 Patent
### (Against XY)

43.     Trans Ova incorporates by reference all allegations of the foregoing paragraphs of these Counterclaims as though fully set forth herein.

44.     An actual and judiciable controversy has arisen between Trans Ova and XY concerning whether any of Trans Ova's products infringe any rights XY claims to have under the '425 Patent. In its Complaint, XY has asserted a purported claim alleging infringement of the '425 Patent by Trans Ova.

45.     Trans Ova has denied XY's claim of infringement. Trans Ova has not manufactured, imported or offered for sale any product that has infringed, currently infringes or would infringe any claims of the '425 Patent, and has not contributed to, nor induced infringement of, the '425 Patent by others.

46.     Because these circumstances create an actual and judiciable controversy, Trans Ova seeks a declaration that it does not infringe the '425 Patent.

47.     Trans Ova prays for a judgment from this Court declaring that Tran Ova's past and current product lines do not infringe the '425 Patent. Trans Ova prays for the recovery of all reasonable litigation expenses and attorney fees associated with the prosecution of this affirmative claim for non-infringement, as XY's meritless pursuit of patent infringement against Trans Ova requires the same.

21584455v1

48.     XY's pursuit of the above-referenced patent infringement claim constitutes an "exceptional case" within the meaning of 35 U.S.C. § 285.

## SECOND CLAIM FOR RELIEF
### Declaration of Non-Infringement of the '307 Patent
### (Against XY)

49.     Trans Ova incorporates by reference all allegations of the foregoing paragraphs of these Counterclaims as though fully set forth herein.

50.     An actual and judiciable controversy has arisen between Trans Ova and XY concerning whether any of Trans Ova's products infringe any rights XY claims to have under the '307 Patent.  In its Complaint, XY has asserted a purported claim alleging infringement of the '307 Patent by Trans Ova.

51.     Trans Ova has denied XY's claim of infringement.   Trans Ova has not manufactured, imported or offered for sale any product that has infringed, currently infringes or would infringe any claims of the '307 Patent, and has not contributed to, nor induced infringement of, the '307 Patent by others.

52.     Because of these circumstances create an actual and judiciable controversy, Trans Ova seeks a declaration that it does not infringe the '307 Patent.

53.     Trans Ova prays for a judgment from this Court declaring that Tran Ova's past and current product lines do not infringe the '307 Patent.  Trans Ova prays for the recovery of all reasonable litigation expenses and attorney fees associated with the prosecution of this affirmative claim for non-infringement, as XY's meritless pursuit of patent infringement against Trans Ova requires the same.

54.    XY's pursuit of the above-referenced patent infringement claim constitutes an "exceptional case" within the meaning of 35 U.S.C. § 285.

## THIRD CLAIM FOR RELIEF
### Declaration of Non-Infringement of the '435 Patent
### (Against XY)

55.    Trans Ova incorporates by reference all allegations of the foregoing paragraphs of these Counterclaims as though fully set forth herein.

56.    An actual and judiciable controversy has arisen between Trans Ova and XY concerning whether any of Trans Ova's products infringe any rights XY claims to have under the '435 Patent.  In its Complaint, XY has asserted a purported claim alleging infringement of the '435 Patent by Trans Ova.

57.    Trans Ova has denied XY's claim of infringement.    Trans Ova has not manufactured, imported or offered for sale any product that has infringed, currently infringes or would infringe any claims of the '435 Patent, and has not contributed to, nor induced infringement of, the '435 Patent by others.

58.    Because these circumstances create an actual and judiciable controversy, Trans Ova seeks a declaration that it does not infringe the '435 Patent.

59.    Trans Ova prays for a judgment from this Court declaring that Tran Ova's past and current product lines do not infringe the '435 Patent. Trans Ova prays for the recovery of all reasonable litigation expenses and attorney fees associated with the prosecution of this affirmative claim for non-infringement, as XY's meritless pursuit of patent infringement against Trans Ova requires the same.

21584455v1

60.     XY's pursuit of the above-referenced patent infringement claim constitutes an "exceptional case" within the meaning of 35 U.S.C. § 285.

### FOURTH CLAIM FOR RELIEF
**Declaration of Non-Infringement of the '768 Patent**
**(Against XY)**

61.     Trans Ova incorporates by reference all allegations of the foregoing paragraphs of these Counterclaims as though fully set forth herein.

62.     An actual and judiciable controversy has arisen between Trans Ova and XY concerning whether any of Trans Ova's products infringe any rights XY claims to have under the '768 Patent.  In its Complaint, XY has asserted a purported claim alleging infringement of the '768 Patent by Trans Ova.

63.     Trans Ova has denied XY's claim of infringement.  Trans Ova has not manufactured, imported or offered for sale any product that has infringed, currently infringes or would infringe any claims of the '768 Patent, and has not contributed to, nor induced infringement of, the '768 Patent by others.

64.     Because these circumstances create an actual and judiciable controversy, Trans Ova seeks a declaration that it does not infringe the '768 Patent.

65.     Trans Ova prays for a judgment from this Court declaring that Tran Ova's past and current product lines do not infringe the '768 Patent.  Trans Ova prays for the recovery of all reasonable litigation expenses and attorney fees associated with the prosecution of this affirmative claim for non-infringement, as XY's meritless pursuit of patent infringement against Trans Ova requires the same.

21584455v1

66.     XY's pursuit of the above-referenced patent infringement claim constitutes an "exceptional case" within the meaning of 35 U.S.C. § 285.

**FIFTH CLAIM FOR RELIEF**
**Declaration of Non-Infringement of the '745 Patent**
**(Against XY)**

67.     Trans Ova incorporates by reference all allegations of the foregoing paragraphs of these Counterclaims as though fully set forth herein.

68.     An actual and judiciable controversy has arisen between Trans Ova and XY concerning whether any of Trans Ova's products infringe any rights XY claims to have under the '745 Patent.  In its Complaint, XY has asserted a purported claim alleging infringement of the '745 Patent by Trans Ova.

69.     Trans Ova has denied XY's claim of infringement.   Trans Ova has not manufactured, imported or offered for sale any product that has infringed, currently infringes or would infringe any claims of the '745 Patent, and has not contributed to, nor induced infringement of, the '745 Patent by others.

70.     Because these circumstances create an actual and judiciable controversy, Trans Ova seeks a declaration that it does not infringe the '745 Patent.

71.     Trans Ova prays for a judgment from this Court declaring that Tran Ova's past and current product lines do not infringe the '745 Patent. Trans Ova prays for the recovery of all reasonable litigation expenses and attorney fees associated with the prosecution of this affirmative claim for non-infringement, as XY's meritless pursuit of patent infringement against Trans Ova requires the same.

21584455v1

72.     XY's pursuit of the above-referenced patent infringement claim constitutes an "exceptional case" within the meaning of 35 U.S.C. § 285.

### SIXTH CLAIM FOR RELIEF
**Declaration of Non-Infringement of the '687 Patent**
**(Against XY)**

73.     Trans Ova incorporates by reference all allegations of the foregoing paragraphs of these Counterclaims as though fully set forth herein.

74.     An actual and judiciable controversy has arisen between Trans Ova and XY concerning whether any of Trans Ova's products infringe any rights XY claims to have under the '687 Patent. In its Complaint, XY has asserted a purported claim alleging infringement of the '687 Patent by Trans Ova.

75.     Trans Ova has denied XY's claim of infringement. Trans Ova has not manufactured, imported or offered for sale any product that has infringed, currently infringes or would infringe any claims of the '687 Patent, and has not contributed to, nor induced infringement of, the '687 Patent by others.

76.     Because these circumstances create an actual and judiciable controversy, Trans Ova seeks a declaration that it does not infringe the '687 Patent.

77.     Trans Ova prays for a judgment from this Court declaring that Tran Ova's past and current product lines do not infringe the '687 Patent. Trans Ova prays for the recovery of all reasonable litigation expenses and attorney fees associated with the prosecution of this affirmative claim for non-infringement, as XY's meritless pursuit of patent infringement against Trans Ova requires the same.

78.    XY's pursuit of the above-referenced patent infringement claim constitutes an "exceptional case" within the meaning of 35 U.S.C. § 285.

**SEVENTH CLAIM FOR RELIEF**
**Declaration of Non-Infringement of the '921 Patent**
**(Against XY)**

79.    Trans Ova incorporates by reference all allegations of the foregoing paragraphs of these Counterclaims as though fully set forth herein.

80.    An actual and judiciable controversy has arisen between Trans Ova and XY concerning whether any of Trans Ova's products infringe any rights XY claims to have under the '921 Patent. In its Complaint, XY has asserted a purported claim alleging infringement of the '921 Patent by Trans Ova.

81.    Trans Ova has denied XY's claim of infringement. Trans Ova has not manufactured, imported or offered for sale any product that has infringed, currently infringes or would infringe any claims of the '921 Patent, and has not contributed to, nor induced infringement of, the '921 Patent by others.

82.    Because these circumstances create an actual and judiciable controversy, Trans Ova seeks a declaration that it does not infringe the '921 patent.

83.    Trans Ova prays for a judgment from this Court declaring that Tran Ova's past and current product lines do not infringe the '921 Patent. Trans Ova prays for the recovery of all reasonable litigation expenses and attorney fees associated with the prosecution of this affirmative claim for non-infringement, as XY's meritless pursuit of patent infringement against Trans Ova requires the same.

38

84.   XY's pursuit of the above-referenced patent infringement claim constitutes an "exceptional case" within the meaning of 35 U.S.C. § 285.

### EIGHTH CLAIM FOR RELIEF
**Declaration of Non-Infringement of the '867 Patent**
**(Against XY)**

85.   Trans Ova incorporates by reference all allegations of the foregoing paragraphs of these Counterclaims as though fully set forth herein.

86.   An actual and judiciable controversy has arisen between Trans Ova and XY concerning whether any of Trans Ova's products infringe any rights XY claims to have under the '867 Patent.  In its Complaint, XY has asserted a purported claim alleging infringement of the '867 Patent by Trans Ova.

87.   Trans Ova has denied XY's claim of infringement.   Trans Ova has not manufactured, imported or offered for sale any product that has infringed, currently infringes or would infringe any claims of the '967 Patent, and has not contributed to, nor induced infringement of, the '867 Patent by others.

88.   Because these circumstances create an actual and judiciable controversy, Trans Ova seeks a declaration that it does not infringe the '867 Patent.

89.   Trans Ova prays for a judgment from this Court declaring that Tran Ova's past and current product lines do not infringe the '867 Patent. Trans Ova prays for the recovery of all reasonable litigation expenses and attorney fees associated with the prosecution of this affirmative claim for non-infringement, as XY's meritless pursuit of patent infringement against Trans Ova requires the same.

90.    XY's pursuit of the above-referenced patent infringement claim constitutes an "exceptional case" within the meaning of 35 U.S.C. § 285.

## NINTH CLAIM FOR RELIEF
**Declaration of Non-Infringement of the '860 Patent**
**(Against XY)**

91.    Trans Ova incorporates by reference all allegations of the foregoing paragraphs of these Counterclaims as though fully set forth herein.

92.    An actual and judiciable controversy has arisen between Trans Ova and XY concerning whether any of Trans Ova's products infringe any rights XY claims to have under the '860 Patent.  In its Complaint, XY has asserted a purported claim alleging infringement of the '860 Patent by Trans Ova.

93.    Trans Ova has denied XY's claim of infringement.   Trans Ova has not manufactured, imported or offered for sale any product that has infringed, currently infringes or would infringe any claims of the '860 Patent, and has not contributed to, nor induced infringement of, the '860 Patent by others.

94.    Because these circumstances create an actual and judiciable controversy, Trans Ova seeks a declaration that it does not infringe the '860 Patent.

95.    Trans Ova prays for a judgment from this Court declaring that Tran Ova's past and current product lines do not infringe the '860 Patent.  Trans Ova prays for the recovery of all reasonable litigation expenses and attorney fees associated with the prosecution of this affirmative claim for non-infringement, as XY's meritless pursuit of patent infringement against Trans Ova requires the same.

40

96.     XY's pursuit of the above-referenced patent infringement claim constitutes an "exceptional case" within the meaning of 35 U.S.C. § 285.

### TENTH CLAIM FOR RELIEF
**Declaration of Non-Infringement of the '920 Patent**
**(Against XY)**

97.     Trans Ova incorporates by reference all allegations of the foregoing paragraphs of these Counterclaims as though fully set forth herein.

98.     An actual and judiciable controversy has arisen between Trans Ova and XY concerning whether any of Trans Ova's products infringe any rights XY claims to have under the '920 Patent.  In its Complaint, XY has asserted a purported claim alleging infringement of the '920 Patent by Trans Ova.

99.     Trans Ova has denied XY's claim of infringement.   Trans Ova has not manufactured, imported or offered for sale any product that has infringed, currently infringes or would infringe any claims of the '920 Patent, and has not contributed to, nor induced infringement of, the '920 Patent by others.

100.    Because these circumstances create an actual and judiciable controversy, Trans Ova seeks a declaration that it does not infringe the '920 Patent.

101.    Trans Ova prays for a judgment from this Court declaring that Tran Ova's past and current product lines do not infringe the '920 Patent.  Trans Ova prays for the recovery of all reasonable litigation expenses and attorney fees associated with the prosecution of this affirmative claim for non-infringement, as XY's meritless pursuit of patent infringement against Trans Ova requires the same.

41

102.   XY's pursuit of the above-referenced patent infringement claim constitutes an "exceptional case" within the meaning of 35 U.S.C. § 285.

## ELEVENTH CLAIM FOR RELIEF
### Declaration of Non-Infringement of the '053 Patent
### (Against XY)

103.   Trans Ova incorporates by reference all allegations of the foregoing paragraphs of these Counterclaims as though fully set forth herein.

104.   An actual and judiciable controversy has arisen between Trans Ova and XY concerning whether any of Trans Ova's products infringe any rights XY claims to have under the '053 Patent.  In its Complaint, XY has asserted a purported claim alleging infringement of the '053 Patent by Trans Ova.

105.   Trans Ova has denied XY's claim of infringement.   Trans Ova has not manufactured, imported or offered for sale any product that has infringed, currently infringes or would infringe any claims of the '053 Patent, and has not contributed to, nor induced infringement of, the '053 Patent by others.

106.   Because these circumstances create an actual and judiciable controversy, Trans Ova seeks a declaration that it does not infringe the '053 Patent.

107.   Trans Ova prays for a judgment from this Court declaring that Tran Ova's past and current product lines do not infringe the '053 Patent. Trans Ova prays for the recovery of all reasonable litigation expenses and attorney fees associated with the prosecution of this affirmative claim for non-infringement, as XY's meritless pursuit of patent infringement against Trans Ova requires the same.

42

108.     XY's pursuit of the above-referenced patent infringement claim constitutes an "exceptional case" within the meaning of 35 U.S.C. § 285.

### TWELFTH CLAIM FOR RELIEF
**Declaration of Invalidity of the '425 Patent**
**(Against XY)**

109.     Trans Ova incorporates by reference all allegations of the foregoing paragraphs of these Counterclaims as though fully set forth herein.

110.     An actual and judiciable controversy has arisen regarding whether the '425 Patent is valid.  By its Complaint, XY has asserted that the '425 Patent is valid and has asserted a purported claim alleging infringement of the '425 Patent against Trans Ova.

111.     Trans Ova has denied XY's claim of infringement and has asserted that the '425 Patent is invalid for failure to meet the conditions of patentability set forth in, or requirements of, one or more provisions of patent laws in the United States, including without limitation, 35 U.S.C. §§ 101, 102, 103 and 112.

112.     Absent a declaration that the '425 Patent is invalid, XY will continue to wrongfully assert the '425 Patent against Trans Ova in violation of the laws and contrary to the public policy of the United States, and thereby continue to cause Trans Ova irreparable damage. Because the above activities and actions have created an actual and judiciable controversy, Trans Ova seeks a declaration that the '425 Patent is invalid.

113.     Trans Ova prays for an order from this court invalidating the '425 Patent.  Trans Ova prays for the recovery of all reasonable litigation expenses and attorney fees associated with the prosecution of this invalidity claim as it was made necessary by XY's meritless pursuit of infringement.

### THIRTEENTH CLAIM FOR RELIEF
**Declaration of Invalidity of the '307 Patent**
**(Against XY)**

114.    Trans Ova incorporates by reference all allegations of the foregoing paragraphs of these Counterclaims as though fully set forth herein.

115.    An actual and judiciable controversy has arisen regarding whether the '307 Patent is valid.  By its Complaint, XY has asserted that the '307 Patent is valid and has asserted a purported claim alleging infringement of the '307 Patent against Trans Ova.

116.    Trans Ova has denied XY's claim of infringement and has asserted that the '307 Patent is invalid for failure to meet the conditions of patentability set forth in, or requirements of, one or more provisions of patent laws in the United States, including without limitation, 35 U.S.C. §§ 101, 102, 103 and 112.

117.    Absent a declaration that the '307 Patent is invalid, XY will continue to wrongfully assert the '307 Patent against Trans Ova in violation of the laws and contrary to the public policy of the United States, and thereby continue to cause Trans Ova irreparable damage. Because the above activities and actions have created an actual and judiciable controversy, Trans Ova seeks a declaration that the '307 Patent is invalid.

118.    Trans Ova prays for an order from this Court invalidating the '307 Patent.  Trans Ova prays for the recovery of all reasonable litigation expenses and attorney fees associated with the prosecution of this invalidity claim as it was made necessary by XY's meritless pursuit of infringement.

21584455v1

## FOURTEENTH CLAIM FOR RELIEF
### Declaration of Invalidity of the '435 Patent
### (Against XY)

119.    Trans Ova incorporates by reference all allegations of the foregoing paragraphs of these Counterclaims as though fully set forth herein.

120.    An actual and judiciable controversy has arisen regarding whether the '435 Patent is valid.  By its Complaint, XY has asserted that the '435 Patent is valid and has asserted a purported claim alleging infringement of the '435 Patent against Trans Ova.

121.    Trans Ova has denied XY's claim of infringement and has asserted that the '435 Patent is invalid for failure to meet the conditions of patentability set forth in, or requirements of, one or more provisions of patent laws in the United States, including without limitation, 35 U.S.C. §§ 101, 102, 103 and 112.

122.    Absent a declaration that the '435 Patent is invalid, XY will continue to wrongfully assert the '435 Patent against Trans Ova in violation of the laws and contrary to the public policy of the United States, and thereby continue to cause Trans Ova irreparable damage. Because the above activities and actions have created an actual and judiciable controversy, Trans Ova seeks a declaration that the '435 Patent is invalid.

123.    Trans Ova prays for an order from this Court invalidating the '435 Patent.  Trans Ova prays for the recovery of all reasonable litigation expenses and attorney fees associated with the prosecution of this invalidity claim as it was made necessary by XY's meritless pursuit of infringement.

21584455v1

## FIFTEENTH CLAIM FOR RELIEF
### Declaration of Invalidity of the '768 Patent
### (Against XY)

124.     Trans Ova incorporates by reference all allegations of the foregoing paragraphs of these Counterclaims as though fully set forth herein.

125.     An actual and judiciable controversy has arisen regarding whether the '768 Patent is valid.  By its Complaint, XY has asserted that the '768 Patent is valid and has asserted a purported claim alleging infringement of the '768 Patent against Trans Ova.

126.     Trans Ova has denied XY's claim of infringement and has asserted that the '768 Patent is invalid for failure to meet the conditions of patentability set forth in, or requirements of, one or more provisions of patent laws in the United States, including without limitation, 35 U.S.C. §§ 101, 102, 103 and 112.

127.     Absent a declaration that the '768 Patent is invalid, XY will continue to wrongfully assert the '768 Patent against Trans Ova in violation of the laws and contrary to the public policy of the United States, and thereby continue to cause Trans Ova irreparable damage. Because the above activities and actions have created an actual and judiciable controversy, Trans Ova seeks a declaration that the '768 Patent is invalid.

128.     Trans Ova prays for an order from this Court invalidating the '768 Patent.  Trans Ova prays for the recovery of all reasonable litigation expenses and attorney fees associated with the prosecution of this invalidity claim as it was made necessary by XY's meritless pursuit of infringement.

46

## SIXTEENTH CLAIM FOR RELIEF
### Declaration of Invalidity of the '745 Patent
### (Against XY)

129.    Trans Ova incorporates by reference all allegations of the foregoing paragraphs of these Counterclaims as though fully set forth herein.

130.    An actual and judiciable controversy has arisen regarding whether the '745 Patent is valid.  By its Complaint, XY has asserted that the '745 Patent is valid and has asserted a purported claim alleging infringement of the '745 Patent against Trans Ova.

131.    Trans Ova has denied XY's claim of infringement and has asserted that the '745 Patent is invalid for failure to meet the conditions of patentability set forth in, or requirements of, one or more provisions of patent laws in the United States, including without limitation, 35 U.S.C. §§ 101, 102, 103 and 112.

132.    Absent a declaration that the '745 Patent is invalid, XY will continue to wrongfully assert the '745 Patent against Trans Ova in violation of the laws and contrary to the public policy of the United States, and thereby continue to cause Trans Ova irreparable damage. Because the above activities and actions have created an actual and judiciable controversy, Trans Ova seeks a declaration that the '745 Patent is invalid.

133.    Trans Ova prays for an order from this Court invalidating the '745 Patent.  Trans Ova prays for the recovery of all reasonable litigation expenses and attorney fees associated with the prosecution of this invalidity claim as it was made necessary by XY's meritless pursuit of infringement.

## SEVENTEENTH CLAIM FOR RELIEF
### Declaration of Invalidity of the '687 Patent
### (Against XY)

134.   Trans Ova incorporates by reference all allegations of the foregoing paragraphs of these Counterclaims as though fully set forth herein.

135.   An actual and judiciable controversy has arisen regarding whether the '687 Patent is valid.  By its Complaint, XY has asserted that the '687 Patent is valid and has asserted a purported claim alleging infringement of the '687 Patent against Trans Ova.

136.   Trans Ova has denied XY's claim of infringement and has asserted that the '687 Patent is invalid for failure to meet the conditions of patentability set forth in, or requirements of, one or more provisions of patent laws in the United States, including without limitation, 35 U.S.C. §§ 101, 102, 103 and 112.

137.   Absent a declaration that the '687 Patent is invalid, XY will continue to wrongfully assert the '687 Patent against Trans Ova in violation of the laws and contrary to the public policy of the United States, and thereby continue to cause Trans Ova irreparable damage. Because the above activities and actions have created an actual and judiciable controversy, Trans Ova seeks a declaration that the '687 Patent is invalid.

138.   Trans Ova prays for an order from this Court invalidating the '687 Patent.  Trans Ova prays for the recovery of all reasonable litigation expenses and attorney fees associated with the prosecution of this invalidity claim as it was made necessary by XY's meritless pursuit of infringement.

48

### EIGHTEENTH CLAIM FOR RELIEF
**Declaration of Invalidity of the '921 Patent**
**(Against XY)**

139.    Trans Ova incorporates by reference all allegations of the foregoing paragraphs of these Counterclaims as though fully set forth herein.

140.    An actual and judiciable controversy has arisen regarding whether the '921 Patent is valid. By its Complaint, XY has asserted that the '921 Patent is valid and has asserted a purported claim alleging infringement of the '921 Patent against Trans Ova.

141.    Trans Ova has denied XY's claim of infringement and has asserted that the '921 patent is invalid for failure to meet the conditions of patentability set forth in, or requirements of, one or more provisions of patent laws in the United States, including without limitation, 35 U.S.C. §§ 101, 102, 103 and 112.

142.    Absent a declaration that the '921 Patent is invalid, XY will continue to wrongfully assert the '921 Patent against Trans Ova in violation of the laws and contrary to the public policy of the United States, and thereby continue to cause Trans Ova irreparable damage. Because the above activities and actions have created an actual and judiciable controversy, Trans Ova seeks a declaration that the '921 Patent is invalid.

143.    Trans Ova prays for an order from this Court invalidating the '921 Patent. Trans Ova prays for the recovery of all reasonable litigation expenses and attorney fees associated with the prosecution of this invalidity claim as it was made necessary by XY's meritless pursuit of infringement.

21584455v1

## NINETEENTH CLAIM FOR RELIEF
### Declaration of Invalidity of the '867 Patent
### (Against XY)

144.    Trans Ova incorporates by reference all allegations of the foregoing paragraphs of these Counterclaims as though fully set forth herein.

145.    An actual and judiciable controversy has arisen regarding whether the '867 Patent is valid.  By its Complaint, XY has asserted that the '867 Patent is valid and has asserted a purported claim alleging infringement of the '867 Patent against Trans Ova.

146.    Trans Ova has denied XY's claim of infringement and has asserted that the '867 Patent is invalid for failure to meet the conditions of patentability set forth in, or requirements of, one or more provisions of patent laws in the United States, including without limitation, 35 U.S.C. §§ 101, 102, 103 and 112.

147.    Absent a declaration that the '867 Patent is invalid, XY will continue to wrongfully assert the '867 Patent against Trans Ova in violation of the laws and contrary to the public policy of the United States, and thereby continue to cause Trans Ova irreparable damage. Because the above activities and actions have created an actual and judiciable controversy, Trans Ova seeks a declaration that the '867 Patent is invalid.

148.    Trans Ova prays for an order from this Court invalidating the '867 Patent.  Trans Ova prays for the recovery of all reasonable litigation expenses and attorney fees associated with the prosecution of this invalidity claim as it was made necessary by XY's meritless pursuit of infringement.

**TWENTIETH CLAIM FOR RELIEF**
**Declaration of Invalidity of the '860 Patent**
**(Against XY)**

149. Trans Ova incorporates by reference all allegations of the foregoing paragraphs of these Counterclaims as though fully set forth herein.

150. An actual and judiciable controversy has arisen regarding whether the '860 Patent is valid. By its Complaint, XY has asserted that the '860 Patent is valid and has asserted a purported claim alleging infringement of the '860 Patent against Trans Ova.

151. Trans Ova has denied XY's claim of infringement and has asserted that the '860 Patent is invalid for failure to meet the conditions of patentability set forth in, or requirements of, one or more provisions of patent laws in the United States, including without limitation, 35 U.S.C. §§ 101, 102, 103 and 112.

152. Absent a declaration that the '860 Patent is invalid, XY will continue to wrongfully assert the '860 Patent against Trans Ova in violation of the laws and contrary to the public policy of the United States, and thereby continue to cause Trans Ova irreparable damage. Because the above activities and actions have created an actual and judiciable controversy, Trans Ova seeks a declaration that the '860 Patent is invalid.

153. Trans Ova prays for an order from this Court invalidating the '860 Patent. Trans Ova prays for the recovery of all reasonable litigation expenses and attorney fees associated with the prosecution of this invalidity claim as it was made necessary by XY's meritless pursuit of infringement.

21584455v1

## TWENTY-FIRST CLAIM FOR RELIEF
### Declaration of Invalidity of the '920 Patent
### (Against XY)

154.  Trans Ova incorporates by reference all allegations of the foregoing paragraphs of these Counterclaims as though fully set forth herein.

155.  An actual and judiciable controversy has arisen regarding whether the '920 Patent is valid.  By its Complaint, XY has asserted that the '920 Patent is valid and has asserted a purported claim alleging infringement of the '920 Patent against Trans Ova.

156.  Trans Ova has denied XY's claim of infringement and has asserted that the '920 Patent is invalid for failure to meet the conditions of patentability set forth in, or requirements of, one or more provisions of patent laws in the United States, including without limitation, 35 U.S.C. §§ 101, 102, 103 and 112.

157.  Absent a declaration that the '920 Patent is invalid, XY will continue to wrongfully assert the '920 Patent against Trans Ova in violation of the laws and contrary to the public policy of the United States, and thereby continue to cause Trans Ova irreparable damage. Because the above activities and actions have created an actual and judiciable controversy, Trans Ova seeks a declaration that the '920 Patent is invalid.

158.  Trans Ova prays for an order from this Court invalidating the ''920 Patent.  Trans Ova prays for the recovery of all reasonable litigation expenses and attorney fees associated with the prosecution of this invalidity claim as it was made necessary by XY's meritless pursuit of infringement.

## TWENTY-SECOND CLAIM FOR RELIEF
### Declaration of Invalidity of the '053 Patent
### (Against XY)

159.    Trans Ova incorporates by reference all allegations of the foregoing paragraphs of these Counterclaims as though fully set forth herein.

160.    An actual and judicible controversy has arisen regarding whether the '053 Patent is valid.  By its Complaint, XY has asserted that the '053 Patent is valid and has asserted a purported claim alleging infringement of the '053 Patent against Trans Ova.

161.    Trans Ova has denied XY's claim of infringement and has asserted that the '053 Patent is invalid for failure to meet the conditions of patentability set forth in, or requirements of, one or more provisions of patent laws in the United States, including without limitation, 35 U.S.C. §§ 101, 102, 103 and 112.

162.    Absent a declaration that the '053 Patent is invalid, XY will continue to wrongfully assert the '053 Patent against Trans Ova in violation of the laws and contrary to the public policy of the United States, and thereby continue to cause Trans Ova irreparable damage. Because the above activities and actions have created an actual and judicible controversy, Trans Ova seeks a declaration that the '053 Patent is invalid.

163.    Trans Ova prays for an order from this Court invalidating the '053 Patent.  Trans Ova prays for the recovery of all reasonable litigation expenses and attorney fees associated with the prosecution of this invalidity claim as it was made necessary by XY's meritless pursuit of infringement.

## TWENTY-THIRD CLAIM FOR RELIEF
**Inequitable Conduct regarding the '425 Patent**
**(Against XY and Inguran)**

164.   Trans Ova incorporates by reference all allegations of the foregoing paragraphs of these Counterclaims as though fully set forth herein.

165.   In connection with the prosecution of the '425 Patent, XY breached its duty of good faith and candor by failing to disclose material information to the PTO through XY's burying of this information.

166.   XY had a duty to disclose to the PTO all information known to XY to be material to patentability with respect to the '425 Patent.

167.   The prior art references that XY failed to identify to the PTO were material to the patentability of the claims of the '425 Patent.

168.   If XY had not obfuscated these prior art references, the PTO would have used the information contained in such references in assessing the patentability of the claims of the '425 Patent.

169.   XY intended to deceive the PTO by failing to specifically identify pertinent prior art references so that it could obtain the '425 Patent.

170.   As a result of XY's inequitable conduct in the prosecution of the '425 Patent, the patent is unenforceable.  Accordingly, Trans Ova requests a declaration from the Court that XY cannot enforce the '425 Patent due to its inequitable conduct in connection therewith.

## TWENTY-FOURTH CLAIM FOR RELIEF
### Inequitable Conduct regarding the '687 Patent
### (Against XY and Inguran)

171.    Trans Ova incorporates by reference all allegations of the foregoing paragraphs of these Counterclaims as though fully set forth herein.

172.    In connection with the prosecution of the '687 Patent, XY breached its duty of good faith and candor by failing to disclose material information to the PTO through XY's burying of this information.

173.    XY had a duty to disclose to the PTO all information known to XY to be material to patentability with respect to the '687 Patent.

174.    The prior art references that XY failed to identify to the PTO were material to the patentability of the claims of the '687 Patent.

175.    If XY had not obfuscated these prior art references, the PTO would have used the information contained in such references in assessing the patentability of the claims of the '687 Patent.

176.    XY intended to deceive the PTO by failing to specifically identify pertinent prior art references so that it could obtain the '687 Patent.

177.    As a result of XY's inequitable conduct in the prosecution of the '687 Patent, the patent is unenforceable.  Accordingly, Trans Ova requests a declaration from the Court that XY cannot enforce the '687 Patent due to its inequitable conduct in connection therewith.

55

### TWENTY-FIFTH CLAIM FOR RELIEF
**Inequitable Conduct regarding the '921 Patent**
**(Against XY and Inguran)**

178.   Trans Ova incorporates by reference all allegations of the foregoing paragraphs of these Counterclaims as though fully set forth herein.

179.   In connection with the prosecution of the '921 Patent, XY breached its duty of good faith and candor by failing to disclose material information to the PTO through XY's burying of this information.

180.   XY had a duty to disclose to the PTO all information known to XY to be material to patentability with respect to the '921 Patent.

181.   The prior art references that XY failed to identify to the PTO were material to the patentability of the claims of the '921 Patent.

182.   If XY had not obfuscated these prior art references, the PTO would have used the information contained in such references in assessing the patentability of the claims of the '921 Patent.

183.   XY intended to deceive the PTO by failing to specifically identify pertinent prior art references so that it could obtain the '921 Patent.

184.   As a result of XY's inequitable conduct in the prosecution of the '921 Patent, the patent is unenforceable.  Accordingly, Trans Ova requests a declaration from the Court that XY cannot enforce the '921 Patent due to its inequitable conduct in connection therewith.

21584455v1

## TWENTY-SIXTH CLAIM FOR RELIEF
### Inequitable Conduct regarding the '860 Patent
### (Against XY and Inguran)

185.    Trans Ova incorporates by reference all allegations of the foregoing paragraphs of these Counterclaims as though fully set forth herein.

186.    In connection with the prosecution of the '860 Patent, XY breached its duty of good faith and candor by failing to disclose material information to the PTO through XY's burying of this information.

187.    XY had a duty to disclose to the PTO all information known to XY to be material to patentability with respect to the '860 Patent.

188.    The prior art references that XY failed to identify to the PTO were material to the patentability of the claims of the '860 Patent.

189.    If XY had not obfuscated these prior art references, the PTO would have used the information contained in such references in assessing the patentability of the claims of the '860 Patent.

190.    XY intended to deceive the PTO by failing to specifically identify pertinent prior art references so that it could obtain the '860 Patent.

191.    As a result of XY's inequitable conduct in the prosecution of the '860 Patent, the patent is unenforceable. Accordingly, Trans Ova requests a declaration from the Court that XY cannot enforce the '860 Patent due to its inequitable conduct in connection therewith.

57

## TWENTY-SEVENTH CLAIM FOR RELIEF
### Inequitable Conduct regarding the '053 Patent
### (Against XY and Inguran)

192.     Trans Ova incorporates by reference all allegations of the foregoing paragraphs of these Counterclaims as though fully set forth herein.

193.     In connection with the prosecution of the '053 Patent, XY breached its duty of good faith and candor by failing to disclose material information to the PTO through XY's burying of this information.

194.     XY had a duty to disclose to the PTO all information known to XY to be material to patentability with respect to the '053 Patent.

195.     The prior art references that XY failed to identify to the PTO were material to the patentability of the claims of the '053 Patent.

196.     If XY had not obfuscated these prior art references, the PTO would have used the information contained in such references in assessing the patentability of the claims of the '053Patent.

197.     XY intended to deceive the PTO by failing to specifically identify pertinent prior art references so that it could obtain the '053 Patent.

198.     As a result of XY's inequitable conduct in the prosecution of the '053 Patent, the patent is unenforceable.  Accordingly, Trans Ova requests a declaration from the Court that XY cannot enforce the '053 Patent due to its inequitable conduct in connection therewith.

21584455v1

## TWENTY-EIGHTH CLAIM FOR RELIEF
### Violation of the Sherman Act, 15 U.S.C. § 2 – Monopolization
### (Against XY and Inguran)

199.    Trans Ova incorporates by reference all allegations of the foregoing paragraphs of these Counterclaims as though fully set forth herein.

200.    Trans Ova is a competitor in the Relevant Markets and possibly other markets.

201.    XY and Inguran possess monopoly power in the Relevant Markets.

202.    XY and Inguran have willfully acquired and maintained monopoly power in the Relevant Markets by engaging in anticompetitive conduct that is exclusionary and predatory.

203.    XY and Inguran's anticompetitive conduct includes, but is not limited to, patent misuse, inequitable conduct, the acquisition of related technology under anticompetitive terms, and other anticompetitive conduct outlined above.

204.    XY and Inguran's monopolization of the Relevant Markets directly and proximately has damaged competition in the Relevant Markets and in Tran Ova's business specifically, and is continuing and will continue to do so by, among other things, causing Trans Ova to lose sales and profits in an amount to be determined at trial.

205.    XY and Inguran's actions violate the Sherman Act, 15 U.S.C. § 2.

## TWENTY-NINTH CLAIM FOR RELIEF
### Violation of the Sherman Act, 15 U.S.C. § 2 – Attempted Monopolization
### (Against XY and Inguran)

206.    Trans Ova incorporates by reference all allegations of the foregoing paragraphs of these Counterclaims as though fully set forth herein.

59

207.   XY and Inguran have engaged in anticompetitive conduct directed at their competitors, including but not limited to Trans Ova, in the Relevant Markets and possibly other markets.

208.   By means of the anticompetitive conduct alleged herein, XY and Inguran intend to destroy competition and build for themselves a monopoly in the Relevant Markets.

209.   XY and Inguran's efforts interfere with Trans Ova's ability to retain existing customers and impede Trans Ova's ability to compete for new customers.

210.   XY and Inguran have a dominant share of the Relevant Markets.

211.   Because of XY and Inguran's anticompetitive conduct, there is a dangerous probability that XY and Inguran will obtain monopoly power in the Relevant Markets.

212.   As a result of XY and Inguran's violation of the Sherman Act, 15 U.S.C. § 2, Trans Ova has been damaged in its business or property by harm to the reputation of its product and it faces future loss of sales.

### THIRTIETH CLAIM FOR RELIEF
**Breach of Contract**
**(Against XY and Inguran)**

213.   Trans Ova incorporates by reference all allegations of the foregoing paragraphs of these Counterclaims as though fully set forth herein.

214.   XY has breached the License Agreement by purporting to terminate it without cause.  This breach was directed and controlled by Inguran.  Trans Ova has satisfied any and all conditions precedent to now pursue a claim for damages under the License Agreement.

215.   As a result of XY's breach of the License Agreement, Trans Ova has sustained harm and will continue to sustain harm, including without limitation, loss profits from its

60

inability to increase its market share. Trans Ova is entitled to recover its damages resulting from XY's breach of the License Agreement, as well as all other forms of legally permissible recovery.

### THIRTY-FIRST CLAIM FOR RELIEF
**Breach of Duty of Good Faith and Fair Dealing**
**(Against XY and Inguran)**

216.　Trans Ova incorporates by reference all allegations of the foregoing paragraphs of these Counterclaims as though fully set forth herein.

217.　In addition to its express provisions, every contract entered into in Colorado and interpreted by Colorado law contains an implied duty of good faith and fair dealing.

218.　XY has breached the License Agreement by breaching its duty of good faith and fair dealing by its conduct set forth above. This breach was directed and controlled by Inguran.

219.　Trans Ova has at all times materially complied with the terms of the License Agreement, and otherwise complied with its obligations under the License Agreement. Moreover, Trans Ova has satisfied any and all conditions precedent to now pursue a claim for damages under the License Agreement.

220.　As a result of XY's breach of good faith and fair dealing and express breach of the License Agreement described above, Trans Ova has sustained, and will continue to sustain harm, including without limitation, lost profits from its inability to increase its market share. Trans Ova is entitled to recover its damages resulting from XY's breach of the License Agreement, as well as all other forms of legally permissible recovery.

21584455v1

221.    Trans Ova is further entitled to a judgment declaring that Trans Ova is now and

has been in material compliance with the License Agreement, and affirming the validity of the

License Agreement.

### THIRTY-SECOND CLAIM FOR RELIEF
**Declaratory Judgment that the License Agreement is not terminated**
**(Against XY)**

222.    Trans Ova incorporates by reference all allegations of the foregoing paragraphs of

these Counterclaims as though fully set forth herein.

223.    Trans Ova has adhered materially to all of the terms of the License Agreement.

224.    XY had no grounds to terminate the License Agreement and did so in violation of

the License Agreement.

225.    Because Trans Ova has not breached the License Agreement and XY wrongfully

attempted to terminate the License Agreement, Trans Ova is entitled to a declaration that the

License Agreement is valid and has been wrongfully terminated.

### THIRTY-THIRD CLAIM FOR RELIEF
**Declaratory Judgment that the License Agreement is unenforceable**
**as to XY's Patents**
**(Against XY)**

226.    Trans Ova incorporates by reference all allegations of the foregoing paragraphs of

these Counterclaims as though fully set forth herein.

227.    The terms of the License Agreement recited above, unlawfully constitute a

perpetual license in the field of providing sex-selected semen products and services.  The terms

of the License Agreement recited above essentially and unlawfully preclude Trans Ova from

undertaking any innovation in the field of providing sex-selected semen products and services.

Moreover, as alleged in paragraph 8 of the Response, the License Agreement is unenforceable due to patent misuse because XY was only willing to license its patents as a package. Finally, the License Agreement is unenforceable because Section 3.1.3 of the License Agreement does not provide for the reduction on the royalty amount upon expiration of various patents.

228.    The terms of the License Agreement which constitute a perpetual license and essentially preclude innovation constitute patent misuse. The conduct of XY in refusing to license separate patents also constitutes patent misuse. Finally, the terms of the License Agreement which maintain a constant royalty rate despite the expiration of various patents constitute patent misuse.

229.    Because XY has engaged in patent misuse   in   connection   with   the   License Agreement as well as license agreements with other entities, Trans Ova is entitled to a declaration that the License Agreement is unenforceable, even though the License Agreement is otherwise valid.

### REQUESTED RELIEF

WHEREFORE, Trans Ova prays that:

A.    The Court dismiss XY's Complaint with Prejudice;

B.    The Court order that XY is not entitled relief, whether requested in its Complaint or otherwise;

C.    The Court adjudges and declares that the claims of the patents-at-issue are invalid and/or not infringed;

21584455v1

D.    The Court adjudges and declares that the '245, the '687, the '921, the '860 and the '053 Patents are unenforceable due to XY's inequitable conduct in connection with the prosecution of such patents;

E.    The Court adjudges and declares that the patents-at-issue are unenforceable due to the patent misuse committed by XY and Inguran;

F.    The Court adjudges and declares that the License Agreement was wrongfully terminated by XY under the direction and control of Inguran;

G.    The Court adjudges and declares that the License Agreement is unenforceable due to inequitable conduct and patent misuse;

H.    The Court adjudges and declares this to be an exceptional case under 35 U.S.C. § 285 and awards Trans Ova its reasonable attorneys' fees;

I.    The Court award Trans Ova its actual damages for its breach of contract counterclaims against XY and Inguran;

J.    The Court award Trans Ova its costs;

K.    The Court issues a preliminary and permanent injunction enjoining XY and Inguran from the anticompetitive acts that form the basis of Trans Ova's antitrust counterclaims;

L.    The Court awards Trans Ova its actual damages trebled, attorneys' fees and costs under 15 U.S. C. § 15 for its antitrust claims against XY and Inguran; and

M.    The Court grant Trans Ova any further and additional relief that this Court deems just and proper.

64

## JURY DEMAND

Trans Ova demands a trial by jury on all matters.

Dated this 25th day of April, 2014.

Respectfully submitted,

LATHROP & GAGE LLP

*/s/ Donald E. Lake, III*
Donald E. Lake, III
George G. Matava
Todd R. Seelman
Alexander C. Clayden
950 17th Street, Suite 2400
Denver, CO 80202
Phone:     720.931.3200
Fax:       720.931.3201
Email:     tlake@lathropgage.com
           gmatava@lathropgage.com
           tseelman@lathropgage.com
           aclayden@lathropgage.com

*Attorneys for Trans Ova Genetics, L.C.*

21584455v1

**CERTIFICATE OF SERVICE**

I hereby certify that on April 25, 2014, I caused the foregoing **DEFENDANT'S AMENDED ANSWER TO SECOND AMENDED COMPLAINT, COUNTERCLAIMS AND JURY DEMAND** to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Kirt S. O'Neill
Daniel L. Moffett
George A. L. Rosbrook
AKIN GUMP STRAUSS HAUER & FELD LLP
300 Convent Street, Suite 1600
San Antonio, TX 78205-3732
Email:   koneill@akingump.com
         dmoffett@akingump.com
         arosbrook@akingump.com

C. Fairley Spillman
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, NW
Washington, DC 20036-1564
Email:   fspillman@akingump.com

Jon F. Sands
Katherine K. Kust
SWEETBAUM SANDS ANDERSON PC
1125 Seventeenth Street, Suite 2100
Denver, CO  80202
Email:   jsands@sweetbaumsands.com
         kkust@sweetbaumsands

/s/ Linda Heersink
Linda Heersink
Legal Administrative Assistant

66

21584455v1

**EXHIBIT 4**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

XY, LLC,                                    §
                                           §
Plaintiff/                                 §
Counter Defendant,                         §
                                           §
v.                                         §        Civil Action No. 1:13-cv-00876-WJM-BNB
                                           §
TRANS OVA GENETICS, LC,                    §
                                           §
Defendant/                                 §
Third Party Plaintiff/                     §
Counter Claimant,                          §
                                           §
v.                                         §
                                           §
INGURAN, LLC,                              §
                                           §
Third Party Defendant.                     §

**UNOPPOSED MOTION FOR LEAVE TO SERVE AND PURSUE**
**LIMITED DISCOVERY ON LATE-ARISING ISSUE RELATING TO**
**TRANS OVA GENETICS L.C.'S MONOPOLIZATION COUNTERCLAIMS**

Plaintiff and Counterclaim Defendant XY, LLC, ("XY"), Counterclaim Defendant

Inguran, LLC ("Inguran") move the Court for leave to serve and pursue limited discovery past

the current discovery deadline from Defendant and Counterclaim Plaintiff Trans Ova Genetics,

L.C. ("Trans Ova") and third party Intrexon Corporation ("Intrexon") relating to Intrexon's

recently announced acquisition of Trans Ova.

Pursuant to a telephonic meet and confer conducted today, counsel for Trans Ova, Mr.

Lake, represented that Trans Ova does not oppose the requested Motion for Leave to Serve and

Pursue Limited Discovery.  Mr. Lake indicated that Trans Ova nevertheless reserves all

objections to the requested discovery, including those outlined in his letter of July 7, 2014.[1]

---

[1] Ex. 1, Letter from T. Lake to D. Moffett (July 7, 2014), responding to Letter from D. Moffett to T. Lake (July 3, 2014), attached as Ex. 2.

### Introduction and Factual Background

Trans Ova, a terminated former licensee of XY, has counterclaimed against XY and its parent company Inguran for various alleged violations of the Sherman Act, including claims for monopolization and attempted monopolization of so-called "markets" for semen sorting protocols and services sold by Trans Ova. (Dkt. 192, 28th and 29th Claims for Relief) Trans Ova seeks to recover damages of more than $40 million on its monopolization claims.

On July 2, 2014, three weeks after the written discovery deadline, [2] Trans Ova's counsel disclosed to XY and Inguran that Trans Ova was in the process of being acquired by Intrexon, a publicly traded company. A day before that, Trans Ova and Intrexon had issued a joint press release describing the proposed acquisition and stating that Trans Ova and Intrexon would soon be filing antitrust-related documents with the FTC and the DOJ, as required by the provisions of the Hart-Scott-Rodino Antitrust Improvement Act of 1976 (the "HSR Act"). [3] The HSR Act requires that the parties to the proposed acquisition make certain disclosures to the Federal Trade Commission and the Department of Justice for the purpose of allowing those federal agencies to determine whether to approve the acquisition on antitrust grounds. In particular, the parties are required to provide so-called "HSR 4(c)" and "HSR 4(d)" documents comprising studies, surveys, analyses, and reports relating to the acquisition that provide information on "market shares, competition, competitors, markets, and potential for sales growth or expansion into product or geographic markets." [4] Even if the parties withhold or redact any of the HSR 4(c) documents based on a claim of privilege, they are required by law to provide a detailed statement

---

[2] *See,* Minute Order extending the written discovery deadline to June 10, 2014 (Dkt. 172).

[3] Ex. 3, Intrexon Press Release (July 1, 2014).

[4] Ex. 4, Instructions to the Notification and Report Form for Certain Mergers and Acquisitions issued in connection with the HSR Act require submission of documents listed in Items 4(c) and 4(d).

of reasons for non-compliance so that the FTC and DOJ can challenge any privilege claims that may be unfounded.[5]

Materials relating to Trans Ova's market, competition, and prospects for growth, including HSR 4(c) and HSR 4(d) documents, are directly relevant to Trans Ova's monopolization claims and are critical to XY and Inguran's defenses against those claims.[6] For example, such material would be relevant to Trans Ova's assertion that sexed semen is a "relevant market" apart from conventional semen; that XY and Inguran have monopoly power in the relevant market; and that Trans Ova has been damaged in the amount of $40 million because it has been unable to fairly compete in the alleged relevant markets. XY and Inguran maintain that material is highly relevant to this case—it goes to the very core of Trans Ova's monopolization claims.

Because of Intrexon's pending acquisition of Trans Ova and the potential existence of HSR 4(c) and HSR 4(d) type documents, XY and Inguran file this unopposed request for leave to pursue this highly relevant and critically important discovery. Specifically, XY and Inguran request unopposed leave to serve and obtain discovery on: (i) the document requests attached as Exhibit 6; (ii) the topics in the supplemental 30(b)(6) notice to Trans Ova attached as Exhibit 7; and (iii) the subpoena to Intrexon attached as Exhibit 8. Each of these discovery requests is narrowly tailored to obtain only relevant discovery on specific aspects of the pending acquisition that relate to Trans Ova's monopolization claims. Indeed, XY and Inguran have narrowly tailored their discovery requests to coincide with the same documentation that the FTC and DOJ obtain—under statutory mandate—to assess markets, competition, pricing, and related issues.

---

[5] Ex. 5, 16 CFR 803.3(d) requiring "a statement of the claim of privilege and all facts relied on in support thereof, including the identity of each document, its author, addressee, date, subject matter, all recipients of the original and of any copies, its present location, and who has control of it," if non-compliance with HSR is based on a claim of privilege.

[6] As noted above, Tran Ova reserves all objections to the requested discovery.

3

There is good cause to permit XY and Inguran to conduct the requested discovery. First, XY and Inguran have been diligent in requesting the documents from Trans Ova as required under the 10th Circuit case law. Second, because the written discovery deadline had already passed before the acquisition was announced; it is impossible for XY and Inguran to propound the attached discovery without leave from this Court. Third, XY and Inguran's requests are narrowly-tailored and will not affect the trial date or the dispositive motion deadline. Finally, because Trans Ova, Intrexon, or both will be providing the requested information to the FTC and the DOJ, Trans Ova and the requested document discovery will not impose any additional burden on them beyond that which is already imposed by the statutory mandate.

### Relevant Law

FRCP Rule 16(b)(4) permits courts to modify a scheduling order for "good cause." The 10th Circuit has held that to demonstrate "good cause" under Rule 16, the moving party must "show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay." *Strope v. Collins*, 315 Fed.Appx. 57, 61 (10th Cir. 2009) (citation omitted); *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006). "Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts." *Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000) (internal quotation and citation omitted). In addition, "[t]he fact that a party first learns through discovery of information which may lead to amendment of deadlines set forth in the Scheduling Order constitutes good cause for such amendment pursuant to Rule 16(b)(4)." *Riggs v. Johnson*, No. 09–cv–01226–WYD–KLM, 2010 WL 1957110, at *3 (D. Colo. Apr. 27, 2010), adopted by 2010 WL 1957099 (D. Colo. May 17, 2010), (citing *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668-69 (D. Colo. 2001).

4

## There is Good Cause to Permit the Requested Discovery

There is good cause to grant this motion because, XY and Inguran learned about the acquisition after the written discovery cut-off. No matter how diligent, the movants could not have served the requests attached with this Motion.[7] Even then, XY and Inguran demonstrated extreme diligence. The very next day after Trans Ova disclosed Intrexon's acquisition, XY and Inguran sent a letter to Trans Ova requesting their consent to (1) produce relevant documents, (2) schedule a 30(b)(6) deposition on the requested documents, and (3) subpoena Intrexon for the same documents.[8] Trans Ova maintains its initial objections to the requests in its July 7th letter[9] but nevertheless has agreed not to oppose XY and Inguran's leave to serve and pursue discovery per the parties meet and confer between parties on Thursday, July 10, 2014.

In light of the late-arising acquisition, and because XY and Inguran are requesting discovery from a third party, a leave to serve and pursue discovery of relevant documents is required. Because the deadline to propound written discovery passed before the acquisition announcement, XY and Inguran cannot serve the requested documents and associated discovery from Trans Ova absent a leave from this Court. Similarly, because the written discovery deadline had already passed, XY and Inguran cannot propound a subpoena on Intrexon absent a leave from this Court. Moreover, because Trans Ova does not oppose XY and Inguran's Motion

---

[7] Although the discovery deadline was extended to July 23, 2014, the deadline to propound written discovery was not changed. *See,* Minute Order extending the written discovery deadline to June 10, 2014 (Dkt. 172), and Minute Order granting the parties' Joint Motion to Extend Discovery Deadline (Dkt. No. 219).

[8] *See,* Ex. 2.

[9] *See,* Ex. 1. In its response, Trans Ova simultaneously asserts that it has no 4(c) type documents and that such documents are privileged under a common interest agreement with Intrexon. It is unlikely that Trans Ova was able to sell itself for $110 million without preparing any analysis regarding the market it competes in, its competitors, or its prospects for growth in the market. It is also unlikely that all of the HSR 4(c) and HSR 4(d) type documents are privileged. At any rate, XY and Inguran are entitled to pursue this discovery and, at a minimum, obtain a privilege log and a deposition regarding the documents that might exist and any claims of privileged asserted by Trans Ova as a basis for withholding or redacting any HSR 4(c) documents. Indeed, to the extent that Trans Ova or Intrexon are asserting privilege on the requested document, the HSR and 16 CFR § 803.3(d) require Trans Ova and Intrexon to prepare such a privilege log for the FTC and the DOJ.

for Leave to Serve and Purse Limited Discovery, this Court should grant XY and Inguran's

Unopposed Motion for Leave to Serve and Pursue Limited Discovery.

## Conclusion

For the forgoing reasons, XY and Inguran's Unopposed Motion for Leave to Serve and

Pursue Limited Discovery should be granted and the Court should permit XY and Inguran to

serve and obtain discovery in connection with (i) the document requests attached as Exhibit 6,

(ii) the topics in the supplemental 30(b)(6) notice to Trans Ova attached as Exhibit 7, and (iii) the

subpoena to Intrexon attached as Exhibit 8.

Dated: July 10, 2014

**AKIN GUMP STRAUSS HAUER & FELD LLP**

_[signature]_

_____

KIRT S. O'NEILL
State Bar No. 00788147
koneill@akingump.com
DANIEL L. MOFFETT
State Bar No. 24051068
dmoffett@akingump.com
GEORGE A. L. ROSBROOK
State Bar No. 24070141
arosbrook@akingump.com
300 Convent Street, Suite 1600
San Antonio, Texas 78205-3732
Telephone: (210) 281-7000
Fax: (210) 224-2035

**SWEETBAUM SANDS ANDERSON PC**

JON F. SANDS
jsands@sweetbaumsands.com
MELISSA C. COLLINS
mcollins@sweetbaumsands.com
1125 Seventeenth Street, Suite 2100
Denver, Colorado 80202
Phone: (303) 296-3377
Fax: (303) 296-7343

**ATTORNEYS FOR XY, LLC AND
INGURAN, LLC**

7

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(b)(1). Pursuant to Fed. R. Civ. P. 5(a)-(d) and Local Rule CV-5(b)(2), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email and/or fax, on this the 10th day of July, 2014.

_____
Kirt S. O'Neill

## CERTIFICATE OF CONFERENCE

The undersigned certifies that counsel for XY and Inguran and counsel for Trans Ova have telephonically conducted a conference at which there was a substantive discussion of items presented to the court in this motion, during which counsel for Trans Ova represented that Trans Ova, while maintaining all objections to the requested discovery, would not oppose XY and Inguran's request for leave to serve and pursue discovery.

Certified to the 10th day of July, 2014.

_____
Kirt S. O'Neill

8