UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| XY, LLC,<br><br>                  **Plaintiff,**<br>      v.<br><br>TRANS OVA GENETICS, L.C.,<br><br>                  **Defendant.** | Miscellaneous Action No. _____<br><br>(This action currently is pending in the United States District Court for the District of Colorado as Case No. 1:13-CV-00876-WJM-BNB) |

## DECLARATION OF DONALD P. LEHR

I, Donald P, Lehr, declare under the penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of my knowledge, information, and belief:

1. My name is Donald P. Lehr. I am an adult over the age of 18 years old and of sound mind. I am competent to testify as to all statements contained herein, which I am making by my own free will.

2. I am Chief Legal Officer for Intrexon Corporation. I make this Declaration in support of Third-Party Intrexon's Motion To Quash Subpoena For Documents And Deposition Of 30(B)(6) Witness And Alternatively For A Protective Order ("the Motion").

3. On July 21, 2014 Intrexon received a Subpoena issued on July 14, 2014 by the United States District Court for the District of Colorado ("the Subpoena"), a copy of which is provided as Exhibit 1 of the Motion. The Subpoena demands compliance on July 30, 2014.

4. The Subpoena seeks documents and things, and seeks to take 30(b)(6) testimony from Intrexon, regarding "HSR Act 4(c) Documents," namely:

1. All studies, surveys, analyses and reports that were prepared by or for any Intrexon officers, directors, or employees exercising similar functions, for the purpose of evaluating or analyzing Intrexon's pending acquisition of Trans Ova with respect to market shares, competition, competitors, markets, and potential for sales growth or expansion into product or geographic markets, as called for under the Hart-Scott-Rodino Antitrust Improvements Act (i.e., evaluation and analysis contained in HSR Act 4(c) Documents).

2. Any correspondence between Trans Ova and Intrexon concerning any of the documents and things identified in Area of Examination No. 1 above.

3. Any correspondence between Trans Ova and Intrexon concerning XV, Inguran, or both.

See, Subpoena, Definition 5 and Areas 1-3 (Motion, Exhibit 1).

4. In particular, the documents and testimony in Area 1 of the Subpoena encompass certain marketing information about the acquisition of Trans Ova Genetics LC ("TOG") that have been: (a) "prepared by or for any Intrexon officers, directors, or employees exercising similar functions;" and (b) "as called for under the Hart-Scott-Rodino Antitrust Improvements Act," which the Subpoena clarifies are "i.e., evaluation and analysis contained in HSR Act 4(c) Documents."

5. Intrexon has not submitted any such HSR Act 4(c) Documents. Intrexon therefore has no studies, surveys, analyses and reports "as as called for under the Hart-Scott-Rodino Antitrust Improvements Act" that were "prepared by or for any Intrexon officers, directors, or employees exercising similar functions." As sought by the Subpoena, Intrexon did not prepare any evaluation and analysis "contained in HSR Act 4(c) Documents." Intrexon itself does not have possession or control of such documents and does not know what any such documents contain.

6. Intrexon likewise does not have correspondence between itself and TOG regarding such studies, surveys, analyses and reports "as called for under the Hart-Scott-Rodino

Antitrust Improvements Act" that were "prepared by or for any Intrexon officers, directors, or employees exercising similar functions."

7. A submission under the HSR Act relating to the acquisition of TOG, and possibly including "HSR Act 4(c) Documents" of the Subpoena, was prepared by the ultimate parent of Intrexon. At the ultimate parent's request, Intrexon supplied the ultimate parent with certain market information that Intrexon obtained from public sources and from TOG. Upon information and belief, the ultimate parent sought such information as part of its effort to gather information which might have been relevant to its HSR submission. Intrexon has no knowledge of whether, or to what extent, any such information supplied by Intrexon may have been incorporated into the ultimate parent's HSR submission. Intrexon obtained and developed such information independently, for its own business purposes, and not for purposes "as called for" in regulatory HSR 4(c) Documents. See, Subpoena (Motion, Exhibit 1).

8. Intrexon received no copies or portions of any HSR submission by TOG. Intrexon did not collaborate with TOG or share information with TOG in connection with the contents of any HSR submission.

9. As explained above, Intrexon has made no filings of HSR 4(c) Documents and has no underlying documents known by it to be contained in HSR 4(c) Documents, and also has no correspondence with TOG concerning 4(c) Documents as specifically called for by the Subpoena. Intrexon believes the Subpoena is limited to that information, and does not reach Intrexon's documents and testimony concerning its own market research, not prepared by it as called for by the HSR Act, and not used by it in any HSR 4(c) Documents.

10. To the extent XY more broadly may be seeking Intrexon's market research, Intrexon believes such documents and testimony are irrelevant to any claims and defenses in the

underlying litigation. Discovery of such information would be unduly burdensome for Intrexon. Intrexon's market research is highly confidential information of the company. This information embodies Intrexon's financial condition, its business plans, its marketing strategies, its research and development, its technologies, its product development and product life cycles, its analysis of competition, and like information -- all of which is extremely valuable and sensitive -- and is no business of XY's. Intrexon could be severely damaged by the disclosure of such information to XY.

11. The Subpoena demands compliance within six days of having been received by Intrexon. This is not a reasonable time for Intrexon to gather and review potentially responsive documents, consider issues of privilege, and prepare one or more witnesses. Intrexon is not a party to the underlying litigation and did not negotiate or enter into any protective order which may be in place there. There is no protective order, and insufficient time, to safeguard Intrexon's information, should there be any documents and testimony that must be produced.

12. To the extent Intrexon's market research comprises attorney communications and opinions, attorney work-product, and expert information. Intrexon has not waived any rights, privileges or protections concerning such information. It would require considerable time, effort and expense to review such documents for compliance with the Subpoena. It would likewise require considerable time, effort and expense to prepare one or more witness to testify.

13. Intrexon's correspondence with TOG is subject to a common interest agreement. To the extent such correspondence may comprise attorney communications and opinions, attorney work-product, and expert information, Intrexon has not waived any rights, privileges, or protections. Intrexon is not aware of any reason why the requested correspondence with TOG (if

relevant) cannot be obtained from TOG, a litigating party, and must be sought from Intrexon, a non-party.

I declare under penalty of perjury that the foregoing is true.

DATED: July 28, 2014                                  _____
                                                                          Donald P. Lehr